**[ORAL ARGUMENT NOT SCHEDULED]**

**No. 24-5207**

---

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE DISTRICT OF COLUMBIA CIRCUIT

———————————

### PATRICK J. MAHONEY,

Plaintiff-Appellee,

v.

### U.S. CAPITOL POLICE BOARD, et al.,

Defendants-Appellants.

———————————

On Appeal from the United States District Court
for the District of Columbia

———————————

**JOINT APPENDIX – VOLUME I OF II**

———————————

YAAKOV M. ROTH
  *Acting Assistant Attorney General*

EDWARD R. MARTIN, JR.
  *United States Attorney*

JOSHUA WALLACE DIXON
ERIC ARTHUR SELL
  *Center for American Liberty*
  *1311 S. Main Street*
  *Suite 207*
  *Mount Airy, MD 21771*

MICHAEL S. RAAB
BRIAN J. SPRINGER
  *Attorneys, Appellate Staff*
  *Civil Division, Room 7537*
  *U.S. Department of Justice*
  *950 Pennsylvania Avenue NW*
  *Washington, DC 20530*

  *Attorneys for Appellee*

  *Attorneys for Appellants*

# TABLE OF CONTENTS

## VOLUME I

**Page**

1.  Plaintiff's Third Amended Verified Complaint (Dkt. No. 69) .............J.A. 1

2.  Order on Motion to Dismiss (Dkt. No. 79)................................J.A. 69

3.  Joint Status Report (Dkt. No. 84)......................................J.A. 71

4.  Order for Referral to Mediation (Dkt. No. 85)..........................J.A. 73

5.  Joint Status Report (Dkt. No. 88)......................................J.A. 75

6.  Joint Status Report (Dkt. No. 89)......................................J.A. 78

7.  Joint Status Report (Dkt. No. 90)......................................J.A. 80

8.  Motion for Entry of Proposed Consent Decree and
    Order of Partial Dismissal (Dkt. No. 91) .............................J.A. 83

9.  Consent Decree and Order of Partial Dismissal (Dkt. No. 92)..........J.A. 90

10. Exhibits to Stipulations of Fact
    (Dkt. Nos. 95-1 to 95-12, 95-14 to 95-21) ...........................J.A. 98

11. Exhibits to Stipulations of Fact
    (Dkt. Nos. 96-1 to 96-21) ...........................................J.A. 138

## VOLUME II

12. Amended Request for Judicial Notice (Dkt. No. 98).....................J.A. 180

13. Exhibits to Amended Request for Judicial Notice
    (Dkt. Nos. 98-4 to 98-6) ............................................J.A. 185

14. Stipulations of Fact (Dkt. No. 99-1) ................................J.A. 395

15. Order on Motions for Summary Judgment (Dkt. No. 111) ..............J.A. 415

16. Opinion on Motions for Summary Judgment (Dkt. No. 112) ..........J.A. 416

17. Amended Opinion on Motions for Summary Judgment
    (Dkt. No. 114) ........................................................................................J.A. 444

18. Exhibits to Plaintiff's Opposition to Motion for Reconsideration
    (Dkt. Nos. 117-1 to 117-3) .......................................................................J.A. 472

19. Order on Motion for Reconsideration (Dkt. No. 122) .......................J.A. 489

20. Opinion on Motion for Reconsideration (Dkt. No. 123) ...................J.A. 490

21. Notice of Appeal (Dkt. No. 127) ............................................................J.A. 512

22. Exhibit to Motion for Stay Pending Appeal (Dkt. No. 128-1) ..........J.A. 514

23. Exhibit to Plaintiff's Opposition to Motion for
    Stay Pending Appeal (Dkt. No. 130-1) ..................................................J.A. 527

24. Order on Motion for Stay Pending Appeal (Dkt. No. 134) ..............J.A. 532

25. Opinion on Motion for Stay Pending Appeal (Dkt. No. 135) ...........J.A. 533

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

REVEREND PATRICK J. MAHONEY,

4019 Duke of Gloucester Street
Fredericksburg, VA 22407

        *Plaintiff,*

   v.

THE UNITED STATES CAPITOL POLICE
BOARD;

United States Capitol Police Board
Office of Professional Responsibility
119 D. Street, NE
Washington, D.C. 20510;

KAREN H. GIBSON, in her Official Capacity
as U.S. Senate Sergeant at Arms and
Doorkeeper and Chair, Capitol Police Board;

Karen H. Gibson
United States Capitol Police Board
U.S. Capitol
Room S-151
Washington, D.C. 20510;

WILLIAM J. WALKER, in his Official
Capacity as U.S. House of Representatives
Sergeant at Arms and Member, Capitol Police
Board;

William J. Walker
United States Capitol Police Board
U.S. Capitol
Room S-124
Washington, D.C. 20510;

Case No. 1:21-cv-02314

1

J.A. 1

J. BRETT BLANTON, in his Official Capacity
as Architect of the Capitol and Member, Capitol
Police Board;

J. Brett Blanton
United States Capitol Police Board
U.S. Capitol
Washington, D.C. 20510;

and

J. THOMAS MANGER, in his Official
Capacity as Chief of Police, Capitol Police, and
Ex-Officio Member, Capitol Police Board;

J. Thomas Manger
United States Capitol Police Board
119 D Street, NE
Washington, DC 20510,

                    *Defendants.*

---

## PLAINTIFF'S THIRD AMENDED VERIFIED COMPLAINT

Plaintiff, Reverend Patrick J. Mahoney ("Rev. Mahoney"), complaining against the above-named Defendants (collectively, the "Government" or the "Board") hereby alleges as follows:

### INTRODUCTION

1.      Rev. Mahoney brings this civil action to vindicate his rights under the First, Fifth, and Fourteenth Amendments to the United States Constitution.  Rev. Mahoney seeks declaratory relief, injunctive relief, and attorney's fees.

2.      The Board has devised and operates a regulatory scheme governing speech on the United States Capitol Grounds under which persons in groups of twenty people or more seeking to conduct demonstration activity must obtain a permit from the Board.  This system of prior restraint is unconstitutional, both facially and as applied.

3.     Rev. Mahoney is an ordained Presbyterian Minister.  In July 2021, he applied for a permit to conduct a prayer vigil involving more than twenty people on the West Front Lawn on September 11, 2021, the twentieth anniversary of September 11, 2001.  The Board denied Rev. Mahoney's permit application, informing him that Capitol Square—the city block surrounding the Capitol Building, which includes the West Front Lawn—was "closed" due to safety concerns stemming from the events of January 6, 2021.

4.     This proffered justification was not true.  By the Board's own admission, it recently allowed at least four events involving twenty people or more to go forward on Capitol Square, including at least two events on the West Front Lawn, the same location where Rev. Mahoney wanted to conduct his prayer vigil.

5.     The Board contends that it allowed these events to go forward because they were conducted or supported by a member of Congress, but allowing or prohibiting speech on the basis of Congressional membership or whether the speech is favored by a member of Congress is constitutionally impermissible.

6.     In addition, the Board's so-called "closure" of Capitol Square to all demonstration activity—other than to government-approved speech—was unlawful because it was not narrowly tailored to any significant governmental purpose.  The Board invoked "security" concerns, but the Board has not demonstrated that any security concerns linger from the events of January 6, 2021 or that new ones exist.  Further, the fact that the Board allowed speech that was deemed permissible to go forward on four other occasions fatally undermines the validity of the Board's assertion that allowing large groups to demonstrate is somehow unsafe.

7.     The very next day after Rev. Mahoney provided the Government notice of this lawsuit, the Board partially re-opened Capitol Square to allow demonstration activity in groups of

3

fewer than twenty people without a permit.  On information and belief, the Board took this measure with the intent of avoiding a harmful ruling in this case and not in the pursuit of any legitimate purpose, a fact that confirms that the Board's restrictions were not narrowly tailored.

8.     On or about July 26, 2022, the Board further loosened its restrictions on demonstration activity group size on Capitol Square.  Specifically, the Board began allowing permitted demonstration activity in groups of (1) 250 people or fewer on the West Front Lawn and (2) 150 people or fewer on the East Grassy Front, with the caveat that certain areas of the East Grassy Front will remain closed to permitted demonstration activity when either house of Congress is in session.

9.     The Board's belated efforts to partially re-open the Capitol Grounds did not cure the constitutional defects in its permitting scheme.  Among other flaws, the Board still determines whether speech goes forward based on whether the speaker is a member of Congress or someone whose speech a member of Congress approves.

10.     Speech in the public square has a long tradition in our nation's history and is essential to our form of government.  Rev. Mahoney respectfully requests the Court's intervention to allow him to exercise his rights on the Capitol Grounds and to declare unlawful the Board's prior acts in prohibiting him from doing so.

## JURISDICTION AND VENUE

11.     This action arises under the First, Fifth, and Fourteenth Amendments to the United States Constitution and the Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202.  Subject matter jurisdiction exists pursuant to 28 U.S.C. § 1331.

12.     Rev. Mahoney sought permission from the Board to conduct prayer vigils involving twenty or more people on Capitol Square.  The Board unjustifiably refused to grant Rev. Mahoney

a permit to conduct those prayer vigils.  In addition, Rev. Mahoney desires to conduct additional demonstration activity on Capitol Square in the future, some of which will involve twenty or more people and, thus, will require him to submit a permit application. The subject matter of this dispute is thus located within the District of Columbia, and venue is proper in the District of Columbia pursuant to 28 U.S.C. § 1391.

## **PARTIES**

13.    Rev. Mahoney is a resident of the State of Virginia, and an individual who chooses to exercise his First Amendment rights throughout this nation and within the District of Columbia. Rev. Mahoney is an ordained Presbyterian Minister who firmly holds the religious belief that Jesus Christ is Lord and Savior and that he has been commissioned by Jesus Christ to spread the good news of the gospel and to speak out in support of human rights and justice.

14.    The United States Capitol Police Board ("Board") is the oversight body of the United States Capitol Police. The Board oversees and supports the United States Capitol Police in its mission and helps to advance coordination between the United States Capitol Police and the Sergeant at Arms of the House of Representatives and the Sergeant at Arms and Doorkeeper of the Senate, in their law enforcement capacities, and the Congress.  Further, the Board has jurisdiction over the Capitol Grounds, and the Board adopted the permitting scheme at issue here and other regulations pertaining to demonstration activity on the Capitol Grounds, makes decisions to grant or fail to grant a permit thereunder, and makes decisions to "close" or "open" the Capitol Grounds to demonstration activity.

15.    Karen H. Gibson is the Sergeant at Arms and Doorkeeper of the United States Senate and the Chair of the Board.  In her role, Ms. Gibson exercises control and authority over the policies, practices, and acts complained of herein and, specifically, the implementation of the

5

J.A. 5

Board's permitting scheme and other regulations and orders pertaining to demonstration activity on the Capitol Grounds, decisions to "close" or "open" the Capitol Grounds to demonstration activity, and policies that determine whether permits are granted or denied. Ms. Gibson is sued in her official capacity.

16.     William J. Walker the Sergeant at Arms of the United States House of Representatives and a Member of the Board. In his role, Mr. Walker exercises control and authority over the policies, practices, and acts complained of herein and, specifically, the implementation of the Board's permitting scheme and other regulations and orders pertaining to demonstration activity on the Capitol Grounds, decisions to "close" or "open" the Capitol Grounds to demonstration activity, and policies that determine whether permits are granted or denied. At all times relevant here, Mr. Walker was acting under color of federal authority and was personally involved in the constitutional violations alleged herein, all of which are clearly established. Mr. Walker is sued in his official capacity.

17.     J. Brett Blanton is the Architect of the Capitol and a Member of the Board. In his role, Mr. Blanton exercises control and authority over the policies, practices, and acts complained of herein and, specifically, the implementation of the Board's permitting scheme and other regulations and orders pertaining to demonstration activity on the Capitol Grounds, decisions to "close" or "open" the Capitol Grounds to demonstration activity, and policies that determine whether permits are granted or denied. At all times relevant here, Mr. Blanton was acting under color of federal authority and was personally involved in the constitutional violations alleged herein, all of which are clearly established. Mr. Blanton is sued in his official capacity.

18.     J. Thomas Manger is the Chief of the Capitol Police and Ex-Officio Member of the Board. In his role, Mr. Manger exercises control and authority over the policies, practices, and

acts complained of herein and, specifically, the implementation of the Board's permitting scheme and other regulations and orders pertaining to demonstration activity on the Capitol Grounds, decisions to "close" or "open" the Capitol Grounds to demonstration activity, and policies that determine whether permits are granted or denied.  At all times relevant here, Mr. Manger was acting under color of federal authority and was personally involved in the constitutional violations alleged herein, all of which are clearly established.  Mr. Manger is sued in his official capacity.

## STATEMENT OF FACTS

### THE APPLICABLE STATUTES AND REGULATIONS

19.     "The United States Capitol Grounds extend from Union Station in the North to Virginia Avenue in the South, and from Second Street Northeast to Third Streets North- and Southwest."  *Lederman v. United States*, 291 F.3d 36, 39 (D.C. Cir. 2002).

20.     The Board is charged with regulating "movement of all vehicular and other traffic . . . within the . . . Capitol Grounds." 2 U.S.C. § 1969(a) (formerly 40 U.S.C. § 212b(a)).  Pursuant to its statutory authority under § 1969(a), the Board promulgated the TRAFFIC REGULATIONS FOR THE UNITED STATES CAPITOL GROUNDS, as amended February 17, 2019 (the "Traffic Regulations").  A true and correct copy of the relevant portions of the Traffic Regulations, which are on the United States Capitol Police website, https://www.uscp.gov/sites/uscapitolpolice.house.gov/files/wysiwyg_uploaded/US%20Capitol%20Grounds%20Traffic%20Regulations_Amended%20February%202019_0.pdf, last visited September 23, 2022, is attached hereto as Exhibit A.

21.     The Traffic Regulations regulate, among other things, "Demonstrations and Special Events" on the Capitol Grounds.  (Traffic Regulations § 12.)  Pursuant to the Traffic Regulations, "[d]emonstration activity is allowed [only] in designated areas as indicated on the 'United States

Capitol Grounds Demonstration Area Map'" (the "Demonstration Area Map"). (*Id.* § 12.2.10 and Appx. G.) "Demonstration activity" is defined as "any protest, rally, march, vigil, gathering, assembly, projecting of images or similar conduct engaged in for the purpose of expressing political, social, religious or other similar ideas, views or concerns protected by the First Amendment of the United States Constitution." (Traffic Regulations § 12.1.10.)

22.     The Traffic Regulations and the Demonstration Area Map designate certain areas of the Capitol Grounds as "No Demonstration Permitted" areas—*i.e.*, areas in which all demonstration activity is prohibited, no matter how large or small the group that wishes to perform demonstration activity. (*Id.* § 12.2.10 and Appx. G.) These areas include, but are not limited to, an approximately 250-foot buffer zone on all sides of the Capitol building itself. (*Id.* § 12.2.10 and Appx. G.) The Traffic Regulations and Demonstration Area Map designate other areas of the Capitol grounds as "Demonstration Permit Area[s]"—*i.e.*, areas in which demonstration activity is allowed, subject to the permitting requirements set forth in more detail below.

23.     A copy of the Demonstration Area Map follows:

8
J.A. 8



UNITED STATES CAPITOL GROUNDS
DEMONSTRATION AREAS MAP

NOVEMBER 2012

(*Id.* Appx. G.). The areas in red are the areas designated as "No Demonstration Permitted" areas. No demonstration activity may occur in these areas, even if a single person is undertaking the demonstration activity.  The areas in green are the areas designated "Demonstration Permit Area[s]."  Traditionally, demonstration activity has been allowed in these areas for (a) individuals and groups of up to nineteen people without a permit and (b) groups of twenty people or more with a permit.

24.    The West Front Lawn is Area 1 on the Demonstration Areas Map.  The East Grassy Front is comprised of Areas 8, 9, 10, and 11.  The Southeast Grassy Front is Area 8.  The city block including Areas 1, 8, 9, 10, and 11 constitute what is known as "Capitol Square."

25.    The Traffic Regulations also provide that "[n]o person or group of any size may engage in demonstration activity on the steps of the United States Capitol, on the steps of any building on Capitol Grounds or in any area otherwise closed or restricted for official use."  (*Id.* §

9

J.A. 9

12.2.20.)  The areas that may be "closed" or "restricted for official use" are broader than the areas designated "No Demonstration Permitted" on the Demonstration Area Map.  In other words, the areas designated "No Demonstration Permitted" on the Demonstration Area Map (*i.e.*, the areas in red) are permanently closed (or, at least, have been closed since December 5, 2012, the effective date of the Demonstration Area Map), while additional areas may be "closed" or "restricted for official use" on a temporary basis.  The Board effects temporary restrictions by enacting "Board Orders," which are written documents approved by the Board that specify restrictions that are being put in place.

26.     The Board promulgated the Traffic Regulations and, accordingly, the Board determined which areas on the Demonstration Area Map were designated "No Demonstration Permitted" and which were designated "Demonstration Permit Area[s]."  Further, the Board determines which areas of the Capitol Grounds should be "closed" or "restricted for official use" on a temporary basis.  The Traffic Regulations do not set forth any standards under which the Board made these determinations in the past or is to make these determinations in the future.

27.     The Traffic Regulations require certain groups of people visiting the Capitol Grounds to obtain a permit.  Specifically, groups of twenty people or more who wish to engage in "demonstration activity" are required to obtain a permit to do so.  (*Id.* § 12.4.10.)  Permit applications must be submitted in writing to the Board at least ten business days prior to the proposed demonstration activity.  (*Id.*)  Permit applications may not be submitted more than one year in advance of the proposed demonstration activity.  (*See* United States Capitol Police Guidelines for Conducting an Event on United States Capitol Grounds, available online at https://www.uscp.gov/sites/uscapitolpolice.house.gov/files/wysiwyg_uploaded/Guidelines%20F or%20Conducting%20an%20Event%20on%20United%20States%20Capitol%20Grounds_Dece

mber%202019.pdf, last visited on September 23, 2022, and attached hereto as <u>Exhibit B</u>.)   Permit applications must set forth certain information about the proposed demonstration activity (such as the requested area; the date, time, and duration of the demonstration activity; and the estimated number of participants, *etc.*).  (Traffic Regulations § 12.4.20.)  Groups of fewer than twenty people are not required to obtain a permit to engage in demonstration activity, nor are groups of any size that do not wish to engage in demonstration activity, such as tour groups.  (*Id.* §§ 12.3.10 and 12.1.3.d.)

28.      Under the Traffic Regulations, there is no requirement that the Board issue a permit on the same terms—or at the same location—as sought in the permit application.  (*Id.* § 12.4.30.)  The Traffic Regulations do not set forth any standards by which the Board determines the terms or location of permits it issues.

29.      Despite the fact the Traffic Regulations authorize certain "demonstration activity" on the Capitol Grounds as set forth above, Title 40 Section 5104(f) of the United States Code provides that, subject only to override by the President of the Senate and the Speaker of the House of Representatives for "occasions of national interest," persons may not "(1) parade, stand, or move in processions or assemblages [on the Capitol] Grounds; or (2) display [on the Capitol] Grounds a flag, banner, or device designed or adapted to bring into public notice a party, organization, or movement."  40 U.S.C. § 5104(f); *see also* 40 U.S.C § 5106(a).

30.      Invoking § 5104(f), and despite the fact the Traffic Regulations authorize certain "demonstration activity," the Traffic Regulations also provide that "[p]arades, assemblages, and display of flags, banners, or devices designed to bring into public notice a party, organization, or movement are not permitted on [the] Capitol Grounds unless concurrently authorized by the

President of the Senate and the Speaker of the House of Representatives." (Traffic Regulations § 12.1.30.a).

31.     The Traffic Regulations themselves do not set forth any criminal punishment attendant to a violation of their provisions. By statute, however, the United States Capitol Police are authorized to enforce federal law and the law of the District of Columbia on the Capitol Grounds. *See* 2 U.S.C. § 1967(a)(4).

32.     District of Columbia Code § 22-1307 provides, among other things, that "[i]t is unlawful for a person, alone or in concert with others . . . [t]o crowd, obstruct, or incommode . . . [t]he passage through or within any park [] and [t]o continue or resume the crowding, obstructing, or incommoding after being instructed by a law enforcement officer to cease the crowding, obstructing, or incommoding." D.C. Code § 22-1307(a)(1)(D), (2). That statute also provides that "[i]t is unlawful for a person, alone or in concert with others, to engage in a demonstration in an area where it is otherwise unlawful to demonstrate and to continue or resume engaging in a demonstration after being instructed by a law enforcement officer to cease engaging in a demonstration." D.C. Code § 22-1307(b)(1). For purposes of this latter provision, demonstration means "marching, congregating, standing, sitting, lying down, parading, demonstrating, or patrolling by one or more persons, with or without signs, for the purpose of persuading one or more individuals, or the public, or to protest some action, attitude, or belief." *Id.*

33.     Violation of D.C. Code § 22-1307 is a misdemeanor, subject to a fine of $500 and / or up to 90 days' imprisonment. *Id.*; *see also* D.C. Code § 22-3571.01.

34.     Violation of § 5104(f) is subject to fine of not more than $5,000, imprisonment for not more than 6 months, or both. 40 U.S.C. § 5109; 18 U.S.C. § 3571(b)(6); 18 U.S.C. § 3559(a)(7).

(Page 15 of Total)

## THE CLOSURE AND PARTIAL REOPENING OF THE CAPITOL GROUNDS

35.     In response to the events of January 6, 2021, the Board erected fences around numerous federal properties, including most, if not all, of the Capitol Grounds.  The Capitol Grounds were surrounded by two fences—an outer fence and an inner fence—and the areas surrounded by the fences were closed to pedestrian traffic and all demonstration activity.

36.     In late March 2021, the Board removed the outer fence, and Areas 3, 5, 6, 12, 15, 16, 17, 18, and 23 on the Demonstration Area Map were opened to pedestrian traffic, demonstration activity in groups of nineteen people or fewer, and permitted demonstrations in groups of twenty or more, with the caveat that demonstration activity was not allowed in groups of over fifty people.  At that time, Areas 1, 2, 4, 7, 8, 9, 10, 11, 13, 14, 19, 20, 21, and 22 were still closed to pedestrian traffic and all demonstration activity.

37.     In early July 2021, the Board removed the inner fence, opening Capitol Square to pedestrian traffic.  At that time, however, the Board did not formally open any additional areas to demonstration activity.

## THE BOARD ALLOWS AT LEAST THREE LARGE EVENTS TO GO FORWARD DESPITE THE FACT CAPITOL SQUARE IS "CLOSED"

38.     After the removal of the inner fence in July 2021, the Board permitted or allowed certain demonstration activities to resume in Capitol Square but not others.  To date, the Board has disclosed the existence of three such events that occurred in the Summer of 2021.

39.     First, the Board issued a permit allowing the American Conservative Union ("ACU") to hold a rally, which was projected to attract 300 participants, on the West Front Lawn on July 27, 2021, for the purpose of seeking action by the Biden Administration against the

13

oppressive communist dictatorship in Cuba.  That event went forward on the West Front Lawn on July 27, 2021, as permitted.  Approximately 300 participants attended this event.

40.     Second, the Board issued a permit allowing another event—sponsored by a group called "Marked by COVID-19"—to go forward on the West Front Lawn in the afternoon of July 27, 2021, involving twenty or more people.  This event went forward as permitted.

41.     Third, after Congress adjourned for its August 2021 recess, the Board allowed House Representative Cori Bush to hold a demonstration—without requiring her to obtain a permit—on the Eastern steps in front of the House of Representatives from approximately July 30 – August 3, 2021, in an effort to convince the Biden Administration to issue an executive order continuing the residential eviction moratorium first implemented in the wake of COVID-19.  The Eastern steps in front of the House of Representatives are in an area designated "No Demonstration Permitted" on the Demonstration Area Map.  Despite this fact, the Board allowed the demonstration to occur.  This demonstration was attended by scores of people, day and night.

42.     The Board admits that it permitted or allowed these events to go forward despite the fact they were prohibited by the Board's temporary closure of Capitol Square and / or the Traffic Regulations.  The Board asserts that it permitted or allowed these events to go forward because "[m]embers of Congress and their staffs do not need a permit to hold their events near the Capitol Building and may request that permit applications [of others] be approved."  According to the Board, these three events were "sponsored," "organized," or "advocated" for by a member of Congress (or their staff).

43.     Under the Board's interpretation of the Traffic Regulations, it does not require that the member of Congress (or their staff) actually be present at the event.  Instead, it would allow an

event to go forward if, for example, a member of Congress (of their staff) simply makes a telephone call to the Board "advocat[ing]" that an event should go forward.

44.     The ACU event was not sponsored or organized by a member of Congress.  Rather, the Board issued a permit to the ACU for this event because it was "advocated" for by a member of Congress (or their staff).   According to the Board, the Board initially was prepared to deny the permit application, but, when a "congressional staffer asked that the permit be granted," the Board changed course and granted the permit.

45.     Under the Board's interpretation of the Traffic Regulations, members of Congress—and those whose speech they favor—are not subject to the limitations on demonstration activity created by the Traffic Regulations and / or the Board's temporary restrictions on speech. Members of Congress—and those whose speech they favor—are not required to go through the normal permitting process that ordinary Americans must go through to obtain a permit.   In addition, members of Congress—and those whose speech they favor—are allowed to conduct demonstration activity that violates the Traffic Regulations and / or the Board's temporary restrictions on speech while the Board turns a blind eye to those violations.  The Board does not give ordinary Americans, like Rev. Mahoney, this preferential treatment.

## THE BOARD DENIES REV. MAHONEY'S PERMIT APPLICATION TO HOLD A PRAYER VIGIL ON SEPTEMBER 11, 2021

46.     Rev. Mahoney is a peaceful man of God.  He felt called by God to hold a prayer vigil on September 11, 2021—the twentieth anniversary of September 11, 2001—on the West Front Lawn (Area 1).

47.     At the September 11th vigil, Rev. Mahoney sought to ask God to, among other things, "protect and watch over America and bring healing to our world and build bridges to our

Muslim neighbors."  In addition to prayer, the vigil would also have involved singing Christian hymns and songs.  It would have resembled a traditional church service.

48.     Rev. Mahoney felt called by God to gather a community of participants at his prayer vigil.  Based on Rev. Mahoney's experience conducting similar vigils in the past and his communications with members of his church and community regarding his proposed prayer vigil, the proposed prayer vigil would have attracted over twenty people to participate in it had the Board allowed it to proceed.  The individuals who would have been involved in the proposed prayer vigil would have been more than mere attendees at the prayer vigil; instead, they would have been participants in the vigil.  Rev. Mahoney would have prayed and led the service, and all of the participants would have had the opportunity to pray aloud themselves and to sing Christian hymns and songs if they so desired, activities that many of the participants would have engaged in.

49.     The proposed prayer vigil—like all other prayer vigils and other demonstration activity Rev. Mahoney has conducted and proposes to conduct on the Capitol Grounds—would not have caused a threat to security of the Capitol Building, the Capitol Grounds, any member of Congress, or anything else in which the Board has a legitimate interest.

50.     Rev. Mahoney is not a member of Congress or a Congressional staff member.  To his knowledge, no members of Congress (or their staff) have ever contacted the Board to "sponsor," "organize," or "advocate" for any demonstration activity he has ever sought to conduct on the Capitol Grounds, nor will they do so in the future.

51.     On July 9, 2021, Rev. Mahoney applied to the Board for a permit to hold his proposed September 11th prayer vigil.

52.     On August 19, 2021, the Board informed Rev. Mahoney that his permit application "could not be processed" because the West Front Lawn was "closed."  Based on this putative

justification, the Board did not grant him a permit. As noted, however, by that time, the Board had allowed at least two other events to occur on the West Front Lawn and another event on the Eastern steps of the House of Representatives.

53.    Rev. Mahoney was not given a permit to conduct his September 11th prayer vigil.

54.    Because the Board denied him a permit, Rev. Mahoney did not hold his proposed prayer vigil on the West Front Lawn on September 11, 2021. Instead, Rev. Mahoney prayed on the West Front Lawn with his wife. The prayer that Rev. Mahoney was allowed to conduct was not an adequate substitute for conducting the prayer vigil he wished to conduct.

55.    If not for the Board's denial of his permit, more than nineteen people would have participated with Rev. Mahoney in his September 11th prayer vigil.

**THE BOARD MODIFIES ITS RESTRICTIONS IN RESPONSE TO REV. MAHONEY'S LAWSUIT**

56.    Rev. Mahoney filed this lawsuit on August 31, 2021. In his initial pleadings, he sought, among other things, a temporary restraining order requiring the Board to issue him a permit to hold his prayer vigil on September 11, 2021.

57.    On the day he initiated this lawsuit, Rev. Mahoney filed, among other things, his original complaint, a motion for a temporary restraining order, and a memorandum in support of his motion for a temporary restraining order. The memorandum cited heavily to *Lederman*, which held that a prior version of the Traffic Regulations, which imposed restrictions on speech on the Capitol Grounds that were less restrictive than the restrictions that were in place on August 31, 2021, were unconstitutionally overbroad.

58.    The Board was made aware of the existence of this lawsuit and Rev. Mahoney's complaint, motion for temporary restraining order, and memorandum in support no later than September 1, 2021.

17

J.A. 17

59.     On September 2, 2021, the very next day, the Board re-opened Areas 2, 4, 7, 13, 14, 19, 20, 21, and 23 to demonstration activity in groups of nineteen people or fewer and permitted demonstrations in groups of twenty people or more, and it removed the limitations on group size in these areas.  In addition, the Board partially re-opened Capitol Square (Areas 1, 8, 9, 10, and 11) to allow demonstration activity in groups of nineteen people or fewer.  In taking this action, the Board cited "the recommendation of the United States Capitol Police, an evaluation of the current security posture of the Capitol complex, and the upcoming demonstrations on the Capitol Grounds and in the city."

60.     On information and belief, the Board took the aforementioned action on September 2, 2021, in response to Rev. Mahoney's lawsuit and in an effort to avoid a harmful ruling in this case and not because of any legitimate purpose related to security.  Rev. Mahoney is making this allegation "on information and belief" because the information at issue—the Board's motivation for re-opening these areas of the Capitol Grounds—lies within the exclusive control of the Board. This allegation is based on the facts that (1) the Board re-opened these areas the very next day after being made aware of this lawsuit, the temporal proximity of which gives rise to an inference of causation, (2) the Board's closures prior to September 2, 2021—which included a complete closure of Capitol Square—was patently unlawful under the logic of *Lederman*, which Rev. Mahoney cited heavily in his memorandum in support of his motion for temporary injunction, and (3) in none of the Government's various filings or evidence it submitted in opposition to Rev. Mahoney's claims since Rev. Mahoney first made this allegation in his Amended Complaint did the Government submit any competent evidence directly disputing it.

**THE BOARD DENIES REV. MAHONEY A PERMIT TO HOLD A PRAYER VIGIL ON GOOD FRIDAY OF 2022**

61.     Rev. Mahoney felt called by God to hold a prayer vigil on the West Front Lawn (Area 1) on Good Friday of 2022 (April 15, 2022).

62.     At the Good Friday prayer vigil, Rev. Mahoney sought to pray for "peace, healing, and unity for our nation" and to share "the powerful message of Christ's love for the world through his sacrifice on the cross."   In addition to prayer, the vigil would also have involved singing Christian hymns and songs.   It would have resembled a traditional church service.

63.     Rev. Mahoney felt called by God to gather a community of participants at his prayer vigil.   Based on Rev. Mahoney's experience conducting similar vigils in the past and his communications with members of his church and community regarding his proposed prayer vigil, the proposed prayer vigil would have attracted twenty-five people to participate in it had the Board allowed it to proceed.   The individuals who would have been involved in the proposed prayer vigil would have been more than mere attendees at the prayer vigil; instead, they would have been participants in the vigil.   Rev. Mahoney would have prayed and led the service, and all of the participants would have had the opportunity to pray aloud themselves and to sing Christian hymns and songs if they so desired, activities that many of the participants would have engaged in.

64.     On January 31, 2022, Rev. Mahoney applied to the Board for a permit to hold his proposed Good Friday prayer vigil.

65.     On February 3, 2022, the Board informed Rev. Mahoney that his permit application could not be "process[ed]" because the West Front Lawn was "restricted . . . to groups of twenty or more" people.   Based on this putative justification, the Board did not issue Rev. Mahoney a permit.

66.     Because the Board denied him a permit, Rev. Mahoney did not hold his proposed prayer vigil on the West Front Lawn on Good Friday of 2022.   Instead, he prayed with three other

individuals on the Capitol Grounds.  The prayer that Rev. Mahoney was allowed to conduct was not an adequate substitute for conducting the prayer vigil he wished to conduct.

67.    If not for the Board's denial of his permit, twenty-five people would have participated with Rev. Mahoney in his Good Friday prayer vigil.

## THE BOARD ALLOWS AT LEAST ONE ADDITIONAL LARGE EVENT TO GO FORWARD DESPITE DENYING REV. MAHONEY'S GOOD FRIDAY PERMIT APPLICATION

68.    On May 26, 2022, the Board allowed a large group of demonstrators, well over 100 people in number, to conduct demonstration activity on Capitol Square that advocated for gun control.  The demonstrators were affiliated with groups called Moms Demand Action and / or Students Demand Action.  The demonstration activity occurred, at least, on the Northeast Grassy Front (Area 8), which, under the Board's then-current restrictions, was an area that was ostensibly closed to demonstration activity in groups of twenty or more people.

69.    Based on the Board's prior admissions in this case, the Board allowed this demonstration activity to go forward because it was "sponsored," "organized," or "advocated" for by a member of Congress (or their staff).

## THE BOARD INITIALLY DENIES REV. MAHONEY PERMITS TO HOLD PRAYER VIGILS ON SEPTEMBER 10, 2022, AND OCTOBER 9, 2022, BUT LATER AMENDED ITS RESTRICTIONS AGAIN

70.    Rev. Mahoney felt called by God to hold prayer vigils on September 10, 2022, on the Southeast Grassy Front (Area 10) and on October 9, 2022, on the West Front Lawn (Area 1). The purpose of these prayer vigils was to ask God for wisdom, unity, and healing in connection with the upcoming midterm elections in November 2022.

71.    Rev. Mahoney felt called by God to hold these prayer vigils on the Southeast Grassy Front and the West Front Lawn, respectively, and not any other location.  The Southeast Grassy

20

J.A. 20

Front is directly adjacent to the House of Representatives, each seat of which is up for election. The West Front Lawn is directly between both Houses of Congress.  In addition to the fact Rev. Mahoney felt called by God to hold vigils at these locations, the locations were important to Rev. Mahoney and to his proposed speech at the proposed prayer vigils.  Over the years, Rev. Mahoney has conducted scores of prayer vigils at these locations, and the proximity of these locations to the Capitol Building makes his speech more impactful on one of its intended audiences—Congress itself.

72.     In addition to prayer, the vigils would also have involved singing Christian hymns and songs.  They would resemble a traditional church service.

73.     Rev. Mahoney felt called by God to gather a community of participants at these proposed prayer vigils.  To that end, he had communications with members of his church and community regarding participation in his proposed prayer vigils.  Based on Rev. Mahoney's experience conducting similar vigils in the past and his communications with members of his church and community, the proposed prayer vigils would attract twenty-five participants. Importantly, the individuals who wanted to be involved in the proposed prayer vigils would be more than mere attendees at the vigils; instead, they would be participants in the vigils.  Rev. Mahoney would pray and lead the service, and all of the participants would have the opportunity to pray aloud and to sing Christian hymns and songs if they so desired, activities that many of the participants would engage in during the prayer vigils.

74.     On or about May 11, 2022, Rev. Mahoney applied to the Board for a permit to hold his proposed September 10th prayer vigil.  On the application, Rev. Mahoney stated that the prayer vigil would be located on the Southeast Grassy Front and would have twenty-five participants.

75.     On or about May 30, 2022, Rev. Mahoney applied to the Board for a permit to hold his proposed October 9th prayer vigil.  On the application, Rev. Mahoney stated that the prayer vigil would be located on the West Front Lawn and have twenty-five participants.

76.     Both of these prayer vigils were prohibited by the Board's then-current restrictions on speech, which precluded demonstration activity in groups of twenty people or more on Capitol Square.  On June 10, 2022, the Board denied Rev. Mahoney's permit applications.

77.     Because the Board denied Rev. Mahoney's permit applications, he filed a motion for preliminary injunction seeking to compel the Board to grant his applications.  On July 26, 2022, two days before the hearing on Rev. Mahoney's motion for preliminary injunction, the Board again loosened its restrictions on demonstration activity group size on Capitol Square.  Specifically, the Board imposed (1) a 250-person limitation on group size on the West Front Lawn (Area 1) and (2) a 150-person limitation on group size on the East Grassy Front (Areas 8–11), with the caveat that Areas 9 and 10 will remain closed to permitted demonstration activity when either the House of Representatives or the Senate are in session.  In taking this action, the Board cited the "recommendation of the United States Capitol Police and their evaluation of the current security posture of the Capitol complex."

78.     On information and belief, the Board took the aforementioned action on July 26, 2022, in response to Rev. Mahoney's motion for preliminary injunction and in an effort to avoid a harmful ruling in this case and not because of any legitimate purpose related to security.  Rev. Mahoney is making this allegation "on information and belief" because the information at issue—the Board's motivation for loosening its restrictions on these areas of the Capitol Grounds—lies within the exclusive control of the Board.  This allegation is based on the facts that (1) the Board previously modified its restrictions in response to Rev. Mahoney's lawsuit, (2) the Board loosened

its restrictions in Areas 1 and 8-11 a mere two days prior to the hearing on Rev. Mahoney's motion for preliminary injunction, the temporal proximity of which gives rise to an inference of causation, and (3) the Board's action was calculated to moot Rev. Mahoney's request for preliminary injunction because the D.C. Circuit Court of Appeals issued an opinion after the Board denied Rev. Mahoney's Good Friday permit application wherein one Circuit Judge concluded that the Board's favoritism toward members of Congress was unconstitutional on the record then before that Court, which record is not materially different from the record in this case.  The fact that the Board took this action on July 26, 2022, in an effort to avoid a harmful ruling in this case further supports the conclusion that the Board's revisions of September 2, 2021, were also taken to avoid a harmful ruling in this case.

79.     Based on its amended restrictions, the Board ultimately granted Rev. Mahoney a permit for his proposed September 10th prayer vigil and that prayer vigil went forward with approximately forty-two participants.  The Board did not grant Rev. Mahoney's permit application for his proposed October 9th prayer vigil.  On or about October 5, 2022, Rev. Mahoney withdrew his permit application for his proposed October 9th prayer vigil.

### REV. MAHONEY DESIRES TO CONDUCT ADDITIONAL DEMONSTRATION ACTIVITY ON THE CAPITOL GROUNDS

80.     Independent of its impermissible permitting regime, the Traffic Regulations impermissibly create a permanent "no-demonstration zone" around the perimeter of the Capitol Building itself where all demonstration activity is prohibited, even by a single demonstrator.  This "no-demonstration zone" violates the First Amendment because it is not narrowly tailored to any significant governmental interest.

81.     Rev. Mahoney desires to engage in a prayer vigil alone and / or with his wife on the Eastern Plaza immediately in front of the steps to the Senate and the House of

Representatives—*i.e.*, in the "no-demonstration zone"—on Good Friday 2023 and every Good Friday of every year for the foreseeable future for the purpose of expressing religious, political, or social ideas, views, or concerns.  Because, however, that area is designated "No Demonstration Activity" on the Demonstration Area Map, he is prohibited from doing so.  If Rev. Mahoney were a member of Congress (or someone whose speech a member of Congress favored), the Board would allow him to engage in this demonstration activity.

82.      During some of his proposed future demonstration activity as set forth herein, Rev. Mahoney desires to hold a small banner, in compliance with Traffic Regulations § 12.6, that contains Bible verses written on it for the purpose of bringing notice to and advancing Christianity. Under 40 U.S.C. § 5104(f) and § 12.1.30.a of the Traffic Regulations, however, he is arguably precluded from engaging in this type of demonstration activity.

83.      Rev. Mahoney also desires to hold additional prayer vigils of a similar nature and character to his proposed prayer vigils set forth above involving twenty or more participants on Capitol Square in the future, which will require him to apply for a permit.  Rev. Mahoney has regularly held prayer vigils involving twenty or more people on the West Front Lawn on Good Friday of years past, and he intends to hold such a prayer vigil there on every Good Friday of every year for the foreseeable future.  Rev. Mahony has applied for a permit to hold such a prayer vigil on the West Front Lawn on Good Friday of 2023, and he intends to apply for a permit to hold such a prayer vigil on the West Front Lawn on every Good Friday of every year for the foreseeable future when he is allowed to do so.  In addition, Rev. Mahoney intends to hold a prayer vigil involving twenty or more participants on the West Front Lawn on January 6, 2023, and he will be submitting a permit application for this event in the near future.  Based on his long history of and

deep experience in conducting demonstration activity, Rev. Mahoney will be able to gather groups of twenty or more participants for his prayer vigils.

84.     Rev. Mahoney also desires to conduct demonstration activity involving more than 250 participants on the West Front Lawn in the future, which will require him to apply for a permit. Rev. Mahoney has held demonstration activity involving more than 250 participants on the West Front Lawn in years past, and he intends to hold such demonstration activity there in the future.

85.     Rev. Mahoney desires to conduct demonstration activity involving approximately 5,000 participants on the West Front Lawn on or about June 24, 2023, to celebrate the one-year anniversary of the Supreme Court's *Dobbs* decision.   At this proposed event, Rev. Mahoney would, among other things, speak to the participants about his views on the *Dobbs* decision and engage in prayer in which the participants would also participate if they were so inclined.   Based on his long history of and deep experience in conducting demonstration activity, Rev. Mahoney would be able to gather a group of more than 250 participants for this proposed demonstration activity.

86.     While Rev. Mahoney wishes to hold his 2023 *Dobbs* event on the West Front Lawn, the Board's group-size restrictions preclude him from doing so.   Thus, it would be futile for him to apply for a permit to hold this event on the West Front Lawn.   The Board's group-size restrictions act as a *de facto* permit denial.

87.     On or about June 25, 2022, Rev. Mahoney applied for—and later obtained—a permit to hold his *Dobbs* event on Union Square (Area 15), which is off Capitol Square.   While Rev. Mahoney wishes to hold his *Dobbs* event on the West Front Lawn, he applied for a permit to hold the event on Union Square because the West Front Lawn was—and is—unavailable under the Board's group-size restrictions.   In addition, under the Traffic Regulations, the same group

J.A. 25

may not hold a permit for more than one demonstration area at the same time, and the permitting regime is "first-come, first-served." While Rev. Mahoney wants to conduct the event on the West Front Lawn, holding the event on Union Square is preferable to not holding it at all.

88. Union Square is further away from the Capitol Building than the West Front Lawn and is not an adequate substitute for the West Front Lawn.

89. Despite obtaining a permit for Union Square, Rev. Mahoney continues to want to hold the event on the West Front Lawn and would do so if allowed. On or about July 29, 2022, after becoming aware that the Board had modified its group size restrictions to allow demonstration activity in groups of 250 or more on the West Front Lawn, Rev. Mahoney spoke with a Capitol Police Officer in the Special Events Division regarding his proposed 2023 *Dobbs* event. The Capitol Police Officer informed Rev. Mahoney that if he wished to apply for a permit to hold his event on the West Front Lawn, he would be required to relinquish his permit for Union Square. (*See also* Traffic Regulations § 12.4.50 ("The same group may not a permit to more than one demonstration area at the same time.").)

90. Rev. Mahoney desires to hold additional demonstration activity of a similar nature and character to his proposed 2023 *Dobbs* event involving more than 250 participants on the West Front Lawn on or about June 24th of every year for the foreseeable future. Based on his long history of and deep experience in conducting demonstration activity, Rev. Mahoney would be able to gather a group of more than 250 participants for this proposed demonstration activity. As with the 2023 *Dobbs* event, these events are precluded under the Board's current orders. Rev. Mahoney will submit a permit application to the Board to conduct his future proposed *Dobbs* events for all such events after the 2023 *Dobbs* event.

91.     If Rev. Mahoney were a member of Congress (or someone whose speech a member of Congress favored), he would not have been required to go through the normal permit application process to obtain a permit for any of his prior proposed demonstration activity, nor would he be required to do so in the future.

92.     If Rev. Mahoney were a member of Congress (or someone whose speech a member of Congress favored), he would have been allowed to conduct his proposed demonstration activity without the necessity of obtaining a permit, and he would be allowed to conduct his proposed demonstration activity in the future without the necessity of obtaining a permit.

## REV. MAHONEY'S HARM

93.     As a result of the Traffic Regulations, the Board's permitting scheme covering the Capitol Grounds, the Board's temporary closures of the Capitol Grounds, and the Board's conduct as alleged herein, Rev. Mahoney has suffered, is suffering, and will suffer in the future violations of his constitutional rights and irreparable harm flowing from the denial of his rights.  Moreover, the Board's acts complained of herein have chilled and deterred, are chilling and deterring, and will chill and deter in the future Rev. Mahoney's (and others') exercise of his (and their) rights.

94.     Unless this Court intervenes, the Board will continue to enforce the Traffic Regulations, the permitting scheme covering the Capitol Grounds, and the Board's temporary closures of the Capitol Grounds in violation of Rev. Mahoney's (and others') constitutional rights.

95.     Rev. Mahoney has no plain, adequate, or complete remedy at law to address the ongoing violations of his constitutional rights, and injunctive and declaratory relief are Rev. Mahoney's only means of securing complete and adequate relief.  No other remedy would offer Rev. Mahoney substantial and complete protection from the continuation of the Board's unconstitutional and unlawful acts, policies, and conduct.  The future chilling and deterrence of

these rights is an absolute certainty unless and until this Court grants the relief requested herein. Accordingly, remedies at law are an inadequate remedy for the Board's constitutional violations.

## CAUSES OF ACTION

### FIRST CAUSE OF ACTION
### Violation of Rev. Mahoney's Constitutional Rights to Freedom of Speech
### as guaranteed by the First Amendment

96.     Rev. Mahoney hereby incorporates by reference all other paragraphs of this Second Amended Complaint as though fully set forth herein.

97.     The Traffic Regulations, the Board's permitting scheme covering the Capitol Grounds, the Board's temporary closures of the Capitol Grounds, and the Board's acts and practices as alleged herein are facially invalid and invalid as applied to the Board's denials of Rev. Mahoney's permit applications under the First Amendment.

98.     The entire Capitol Grounds, including but not limited to Capitol Square, are a traditional public forum.  *See Lederman*, 291 F.3d at 42 ("[T]he entire Capitol Grounds are a public forum."); *see also Jeannette Rankin Brigade v. Chief of Capitol Police*, 342 F. Supp. 575, 583–84 (D.D.C. 1972) (concluding that the Capitol Grounds are "an area to which access cannot be denied broadly or absolutely"), *aff'd* 409 U.S. 972 (1972).

99.     Rev. Mahoney's proposed speech at all of his proposed prayer vigils and other demonstration activity is protected by the First Amendment.

100.    The Traffic Regulations, the Board's permitting scheme covering the Capitol Grounds, the Board's temporary closures of the Capitol Grounds, and the Board's acts and practices as alleged herein are facially invalid because they confer unduly broad discretion on public officials without narrow, objective, and definite standards in determining whether to grant a permit or request for use of the Capitol Grounds or, if a permit is granted, the terms upon which it is granted.

101.    The Board admits that it interprets the Traffic Regulations not to apply to members of Congress (and their staff) and that it determines whether proposed demonstration activity goes forward on the Capitol Grounds by evaluating whether the proposed activity is "sponsored," "organized," or "advocated" for by a member of Congress (or their staff).  That exception does not require that the Member of Congress individually organize the event, speak at the event, or even be present at the event.  Instead, it would allow an event to go forward if, for example, a member of Congress (of their staff) simply makes a telephone call to the Board "advocat[ing]" that an event should go forward.  There are, however, no standards that govern whether Congressional members (or their staffs) "sponsor[]", "organize[]," or "advocate[]" for a particular event.  Instead, members of Congress (or their staffs) simply "sponsor[]", "organize[]," or "advocate[]" for speech that they approve.    Requiring an individual to "obtain[] approval of speech from a governmental actor without any constraining and objective standards" violates the First Amendment.  *Mahoney v. U.S. Capitol Police Bd.*, No. 22-5094, 2022 WL 1177313, at *3 (D.C. Cir. Apr. 15, 2022) (Millett, J., concurring); *see also id.* ("The First Amendment does not tolerate a procedure by which government officials may indicate a preference for the substance of what the favored speakers have to say." (cleaned up)).

102.    The Traffic Regulations, the Board's permitting scheme covering the Capitol Grounds, the Board's temporary closures of the Capitol Grounds, and the Board's acts and practices as alleged herein are facially invalid because the Board makes the determination of whether to grant a permit or allow use of the Capitol Grounds based on the content of the speaker's speech and such determination does not satisfy strict scrutiny.

103.    The Traffic Regulations, the Board's permitting scheme covering the Capitol Grounds, the Board's temporary closures of the Capitol Grounds, and the Board's acts and

practices as alleged herein are facially invalid because the Board makes the determination of whether to grant a permit or allow use of the Capitol Grounds based on the identity of the speaker— *i.e.*, whether the speaker is a member of Congress (or their staff) or their speech is "sponsored," "organized," or "advocated" for by a member of Congress (or their staff)—and basing a decision on these grounds does not satisfy strict scrutiny.

104.    The Traffic Regulations, the Board's permitting scheme covering the Capitol Grounds, the Board's temporary closures of the Capitol Grounds, and the Board's acts and practices as alleged herein are facially invalid because they afford public officials unduly broad discretion in determining the terms upon which a permit is granted or speech is allowed.  While the Traffic Regulations state that the Board "shall" issue a permit upon request, there is no requirement that the permit be for the area requested; for the date, time, duration, or nature of the demonstration activity requested; for the estimated number of participants requested; or that the props or equipment requested be allowed, and there are no standards that govern the Board's decision-making on these points.

105.    The Traffic Regulations, the Board's permitting scheme covering the Capitol Grounds, the Board's temporary closures of the Capitol Grounds, and the Board's acts and practices as alleged herein are invalid as applied to the Board's denials of Rev. Mahoney's permit applications because those denials were and will be content based and do not satisfy strict scrutiny.

106.    When a member of Congress (or their staff) "sponsor[s]," "organize[s]," or "advocate[s]" for the speech of another, they do so because they approve of the speech at issue. *See Mahoney*, 2022 WL 1177313, at *3 (Millett, J., concurring).  A member or (members) of Congress (or their staff) conducted the event on the Eastern steps of the House of Representatives, a member (or members) of Congress (or their staff) approved the ACU event and the "Marked by

COVID-19" event on the West Front Lawn, and a member (or members) of Congress (or their staff) either conducted or approved the Moms Demand Action / Students Demand Action event on the Northeast Grassy Front. No member of Congress (or their staff) approved of Rev. Mahoney's message at any of his proposed demonstration activity. Accordingly, the Board's denial of Rev. Mahoney's permit applications was and will be based on the content of his proposed speech. *See Mahoney*, 2022 WL 1177313, at *3 (Millett, J., concurring) ("[The Board's] policy of selectively allowing speech just because a governmental actor approves it is not remotely content neutral."); *see also id.* ("[I]t is clearly unconstitutional for a law to enable a public official to determine which expressions of view will be permitted and which will not." (cleaned up)).

107.   The Traffic Regulations, the Board's permitting scheme covering the Capitol Grounds, the Board's temporary closures of the Capitol Grounds, and the Board's acts and practices as alleged herein are facially invalid because they are content-based and lack the procedural safeguards set forth in *Freedman v. Maryland*, 380 U.S. 51 (1965) and *Southeastern Promotions, Ltd v. Conrad*, 420 U.S. 546 (1975); namely, they do not (1) place the burden of instituting judicial proceedings and proving that the material is unprotected on the government, (2) impose their restraint only for a specified brief period of time and only for the purpose of preserving the status quo, and (3) assure a prompt final judicial determination.

108.   The Traffic Regulations, the Board's permitting scheme covering the Capitol Grounds, the Board's temporary closures of the Capitol Grounds, and the Board's acts and practices as alleged herein are invalid as applied to the Board's denials of Rev. Mahoney's permit applications because those denials were based on speaker identity—*i.e.*, whether the speaker is a member of Congress (or their staff) or their speech is "sponsored," "organized," or "advocated" for by a member of Congress (or their staff)—and do not satisfy strict scrutiny.

109.    The Board has impermissibly discriminated against Rev. Mahoney and will continue to discriminate against him in the future by failing to grant his permit applications and by closing portions of the Capitol Grounds to him while allowing different speech by different speakers in the same and similar locations to occur based solely on whether the speaker is a member of Congress (or their staff speech) or the speech is "sponsored," "organized," or "advocated" for by a member of Congress (or their staff).

110.    The Traffic Regulations, the Board's permitting scheme covering the Capitol Grounds, the Board's temporary closures of the Capitol Grounds, and the Board's acts and practices as alleged herein are facially invalid and invalid as applied because a restriction on speech that prohibits all demonstration activity on Capitol Square is not narrowly tailored to any significant governmental interest.  There are numerous alternate measures the Board could take that would serve the interest it asserts that would be less restrictive on speech.  In addition, the facts that (1) the Traffic Regulations allow groups larger than twenty people to gather to perform non-demonstration activity and (2) the Board allowed several other events to go forward undermine its assertion that demonstration activity in groups of twenty or more presents a security threat. The Board's actions are underinclusive to the interest they purportedly serve.  Further, the fact that the Board modified its restrictions to avoid a harmful ruling in this lawsuit reveals that it was not acting in the pursuit of any legitimate regulatory aim.

111.    The Traffic Regulations, the Board's permitting scheme covering the Capitol Grounds, the Board's temporary closures of the Capitol Grounds, and the Board's acts and practices as alleged herein are facially invalid and invalid as applied because a restriction on speech that prohibits demonstration activity in groups of twenty people or more on Capitol Square is not narrowly tailored to any significant governmental interest.   There are numerous alternate measures

the Board could take that would serve the interest it asserts that would be less restrictive on speech. In addition, the facts that (1) the Traffic Regulations allow groups larger than twenty people to gather to perform non-demonstration activity and (2) the Board allowed several other events involving more than twenty people to go forward undermine its assertion that demonstration activity in groups of twenty people or more presents a security threat. The Board's actions are underinclusive to the interest they purportedly serve.  Further, the fact that the Board modified its restrictions to avoid a harmful ruling in this lawsuit reveals that it was not acting in the pursuit of any legitimate regulatory aim.

112.   Rev. Mahoney has a First Amendment right to have his anticipated number of participants in his demonstration activity.  By failing to issue Rev. Mahoney his requested permits and by closing portions of the Capitol Grounds to his groups, the Board's actions have restrained, are restraining, and will restrain the manner of Rev. Mahoney's speech.

113.   Title 40 section 5104(f) and the Traffic Regulations are unconstitutionally vague insofar as § 5104(f) provides that persons may not "(1) parade, stand, or move in processions or assemblages [on the Capitol] Grounds; or (2) display [on the Capitol] Grounds a flag, banner, or device designed or adapted to bring into public notice a party, organization, or movement" while the Traffic Regulations allow "demonstration activity" in either groups of nineteen people or fewer without a permit or groups of twenty people or more with a permit.

114.   The Traffic Regulations are unconstitutionally vague insofar as they allow "demonstration activity" in either groups of nineteen people or fewer without a permit or groups of twenty people or more with a permit, on the one hand, while simultaneously prohibiting "[p]arades, assemblages and displays of flags, banners, or devices designed to bring into public

notice a party, organization, or movement" unless authorized by the President of the Senate and the Speaker of the House of Representatives.

115.    Title 40 section 5104(f) is facially overbroad because it is not narrowly tailored to any significant governmental interest and does not leave open adequate alternative channels of communication.

116.    Title 40 section 5104(f) is facially overbroad because it grants unfettered discretion to the President of the Senate and the Speaker of the House of Representatives to make content-based determinations as to what demonstration activity may go forward.

117.    Title 40 section 5104(f) is facially overbroad because it grants unfettered discretion to the President of the Senate and the Speaker of the House of Representatives to authorize demonstration activity for "occasions of national interest."

118.    The Traffic Regulations, the Board's permitting scheme covering the Capitol Grounds, the Board's temporary closures of the Capitol Grounds, and the Board's acts and practices as alleged herein are facially invalid because § 12.1.30.a of the Traffic Regulations is not narrowly tailored to any significant governmental interest and does not leave open adequate alternative channels of communication.

119.    The Traffic Regulations, the Board's permitting scheme covering the Capitol Grounds, the Board's temporary closures of the Capitol Grounds, and the Board's acts and practices as alleged herein are facially invalid because § 12.1.30.a of the Traffic Regulations authorizes the President of the Senate and the Speaker of the House of Representatives to make content-based determinations as to what demonstration activity may go forward.

120.    The Traffic Regulations, the Board's permitting scheme covering the Capitol Grounds, the Board's temporary closures of the Capitol Grounds, and the Board's acts and

practices as alleged herein are facially invalid because they afford public officials unduly broad discretion insofar as § 12.1.30.a of the Traffic Regulations grants unfettered discretion to the President of the Senate and the Speaker of the House of Representatives to authorize "[p]arades, assemblages and displays of flags, banners or devices designed to bring into public notice a party, organization or movement" to the extent such activity is otherwise prohibited.

121.    The Traffic Regulations, the Board's permitting scheme covering the Capitol Grounds, the Board's temporary closures of the Capitol Grounds, and the Board's acts and practices as alleged herein are facially invalid and invalid as applied because requiring a permit for demonstration activity conducted by groups as small as twenty persons is not narrowly tailored to any significant governmental interest.

122.    The Traffic Regulations, the Board's permitting scheme covering the Capitol Grounds, the Board's temporary closures of the Capitol Grounds, and the Board's acts and practices as alleged herein are facially invalid and invalid as applied because requiring permit applications be received ten days in advance of any proposed demonstration activity is not narrowly tailored to any significant governmental interest and does not leave open adequate alternative channels of communication.

123.    The Traffic Regulations are facially invalid because they prohibit a substantial amount of protected speech, including but not limited to speech within the approximate 250-foot buffer zone around the Capitol Building designated as a "No Demonstration Activity" area.  The Traffic Regulations would prohibit even a lone demonstrator from conducting demonstration activity in that area, an outcome the District of Columbia Court of Appeals has previously held is not narrowly tailored to any significant governmental interest.  *See Lederman*, 291 F.3d at 44.

124.    The Traffic Regulations are invalid as applied to Rev. Mahoney insofar as he is not allowed to engage in any demonstration activity within the approximate 250-foot buffer zone around the Capitol Building designated as a "No Demonstration Activity" area.  Prohibiting Rev. Mahoney from engaging in any demonstration activity, even as a lone demonstrator, is not narrowly tailored to any significant governmental interest.  *See Lederman*, 291 F.3d at 44.

125.    Rev. Mahoney has no adequate remedy at law, has suffered, and will suffer serious and irreparable harm to his constitutional rights unless the Board is enjoined.

126.    Rev. Mahoney is entitled to declaratory relief and temporary, preliminary, and permanent injunctive relief invalidating and restraining the Board from violating his constitutional rights.

127.    Rev. Mahoney found it necessary to engage the services of private counsel to vindicate his rights under the law.  Rev. Mahoney is therefore entitled to an award of attorneys' fees and costs pursuant to 28 U.S.C. § 2412.

## SECOND CAUSE OF ACTION
### Violation of Rev. Mahoney's Constitutional Rights to
### Freedom of Assembly and Association as guaranteed by the First Amendment

128.    Rev. Mahoney hereby incorporates by reference all other paragraphs of this Third Amended Complaint as though fully set forth herein.

129.    The Traffic Regulations, the Board's permitting scheme covering the Capitol Grounds, the Board's temporary closures of the Capitol Grounds, and the Board's acts and practices as alleged herein are unconstitutional on their face and as applied under the First Amendment.

130.    Rev. Mahoney intended, presently intends, and intends in the future peacefully to exercise his constitutional right to assembly and association on the Capitol Square during his proposed demonstration activity along with the other participants.  The Traffic Regulations, the

J.A. 36

Board's permitting scheme covering the Capitol Grounds, the Board's temporary closures of the Capitol Grounds, and the Board's acts and practices as alleged herein have prevented, are preventing, and will prevent him in the future from doing so.

131.    Rev. Mahoney intended, presently intends, and intends in the future to conduct his proposed demonstration activity along with the other proposed participants for the purpose of engaging in activities protected by the First Amendment, including speech, assembly, and the exercise of religion.

132.    Rev. Mahoney has a First Amendment right to have his anticipated number of participants in his proposed demonstration activity.  By failing to issue Rev. Mahoney his requested permits, the Board's actions have restrained, are restraining, and will restrain the manner of Rev. Mahoney's speech.

133.    Rev. Mahoney's proposed speech at his proposed demonstration activity constitutes expressive association.

134.    Rev. Mahoney's proposed speech at his proposed demonstration activity is directed primarily toward God.  Rev. Mahoney's speech constitutes religious activity and is protected by the rights to assembly and association.  By limiting the size of the group who may participate with Rev. Mahoney in his religious activity without adequate justification, the Board interferes with these rights.

135.    Rev. Mahoney's sincerely held religious belief is that the practice of religion, including prayer in the public square, is a communal event, creating a body of believers in union with Christ.  While Rev. Mahoney was, is, and will be able to hold demonstration activity on Capitol Square with fewer participants than he wanted to gather for his religious exercise, the Board's limitations on the number of participants who can participate in his demonstration activity

substantially interfered with, substantially interferes with, and will substantially interfere with in the future the religious community he felt called to gather.

136.   Rev. Mahoney's proposed speech at his proposed demonstration activity is also directed toward members of Congress as they deliberate our nation's laws, other participants in his proposed demonstration activity, and any other person who might hear the speech live or over communication media.   Rev. Mahoney's speech thus engages in the advocacy of political and public causes and is protected by the rights to assembly and association.

137.   The size of the group conducting demonstration activity is important to its impact. By limiting the size of the group who may participate with Rev. Mahoney in his demonstration activity without adequate justification, the Board has blunted, is blunting, and will blunt in the future the impact of Rev. Mahoney's message in violation of his rights.

138.   The Traffic Regulations, the Board's permitting scheme covering the Capitol Grounds, the Board's temporary closures of the Capitol Grounds, and the Board's acts and practices as alleged herein interfere with Rev. Mahoney's rights to assemble and associate, and the Board should be enjoined from enforcing, effecting, or otherwise implementing the acts and practices complained of herein.

139.   The Traffic Regulations, the Board's permitting scheme covering the Capitol Grounds, the Board's temporary closures of the Capitol Grounds, and the Board's acts and practices as alleged herein do not serve a compelling state interest, unrelated to the expression ideas, that cannot be achieved through means significantly less restrictive of associational freedoms.

140.   The Traffic Regulations, the Board's permitting scheme covering the Capitol Grounds, the Board's temporary closures of the Capitol Grounds, and the Board's acts and

practices as alleged herein do not bear a rational relationship to the purpose that the practices and policies are intended to accomplish.

141.   The Traffic Regulations, the Board's permitting scheme covering the Capitol Grounds, the Board's temporary closures of the Capitol Grounds, and the Board's acts and practices as alleged herein violate Rev. Mahoney's right to assembly and association under the First Amendment for all the same reasons they violate Rev. Mahoney's right to free speech under the First Amendment.

142.   Rev. Mahoney has no adequate remedy at law, has suffered, and will suffer serious and irreparable harm to his constitutional rights unless the Board is enjoined.

143.   Rev. Mahoney is entitled to declaratory relief and temporary, preliminary, and permanent injunctive relief invalidating and restraining the Board from violating his constitutional rights.

144.   Rev. Mahoney found it necessary to engage the services of private counsel to vindicate his rights under the law.  Rev. Mahoney is therefore entitled to an award of attorneys' fees and costs pursuant to 28 U.S.C. § 2412.

**THIRD CAUSE OF ACTION**
**Violation of Rev. Mahoney's Constitutional Rights to Due Process of Law as Guaranteed by the Fifth Amendment to the United States Constitution**

145.   Rev. Mahoney hereby incorporates by reference all other paragraphs of this Third Amended Complaint as though fully set forth herein.

146.   The Due Process Clause of the Fifth Amendment provides that no person shall "be deprived of life, liberty, or property, without due process of law[.]"

147.   The Due Process Clause of the Fifth Amendment obligates the Board to describe its prohibitions on speech and religious exercise in a manner that does not encourage arbitrary and discriminatory enforcement.  The Due Process Clause of the Fifth Amendment also prohibits the

Board from regulating speech and religious exercise in a manner that fails to define the prohibitions with sufficient definiteness that ordinary people can understand what conduct is prohibited. The Board has violated—and is continuing to violate—both of these principles.

148.   The Traffic Regulations, the Board's permitting scheme covering the Capitol Grounds, the Board's temporary closures of the Capitol Grounds, and the Board's acts and practices as alleged herein afford the Board unfettered discretion to regulate speech without any clear or precise standards subject to objective measurement or application and without adequate procedural safeguards, thus encouraging arbitrary and discriminatory enforcement.

149.   The Traffic Regulations, the Board's permitting scheme covering the Capitol Grounds, the Board's temporary closures of the Capitol Grounds, and the Board's acts and practices as alleged herein are unconstitutionally overbroad on their face because the Board prohibits a substantial amount of protected First Amendment activity in a traditional public forum.

150.   The Traffic Regulations, the Board's permitting scheme covering the Capitol Grounds, the Board's temporary closures of the Capitol Grounds, and the Board's acts and practices as alleged herein are unconstitutionally vague on their face because the Board does not publish orders of the Board or otherwise make known to the public the temporary limitations on speech it imposes, and, thus, persons of ordinary intelligence have no means of discerning what areas of the Capitol Grounds are closed to demonstration activity, what areas of the Capitol Grounds are open to demonstration activity, and, if open, what demonstration activity is prohibited and what demonstration activity is allowed. This also encourages arbitrary enforcement and fails to define prohibitions with sufficient definiteness that ordinary people can understand what conduct is prohibited.

151.     Rev. Mahoney wishes to and does regularly engage in speech that does not require a permit on the Capitol Grounds to the full extent allowed under the Traffic Regulations, including participating in demonstration activity on Capitol Square in groups of fewer than twenty people. When the Board restricts speech to a degree greater than contemplated under the Traffic Regulations without publishing those restrictions or otherwise making them public, as it has done in the past—including but not limited to in July 2021 when the Board removed the inner fencing but still considered Capitol Square "closed" to all demonstration activity—and will continue to do so in the future without intervention from the Court, Rev. Mahoney faces a credible threat of prosecution because he does not have a practical way to determine the scope of the Board's additional prohibitions.  In addition, by imposing restrictions on speech without publishing or otherwise making known the content of such restrictions, the Board chills Rev. Mahoney's First Amendment rights because he has no way of knowing what restrictions—over and above those set forth in the Traffic Regulations—may be in effect.  Indeed, in May 2022, Rev. Mahoney was impermissibly directed by a United States Capitol Police Officer to disperse when he was engaging in permissible demonstration activity on Capitol Square in a group of fewer than twenty people. At that time, Rev. Mahoney did not know whether the Board had secretly imposed additional restrictions.  Thus, Rev. Mahoney was required to stop his demonstration activity for a time in order to ascertain, through conversations with the Officer's superiors, whether he was, in fact, allowed to speak.  If the Board's restrictions were published or otherwise made known, Rev. Mahoney would have known what was prohibited and what was not, and he would not have been required to stop his permissible speech so that he could ascertain what was allowed and what was not.  Restrictions on speech must define their prohibitions clearly, and it follows that if restrictions

are not published or otherwise made known to the public, the public, including Rev. Mahoney, has no way of knowing what is allowed and what is forbidden, a result that impermissibly chills speech.

152.    Title 40 section 5104(f) is facially overbroad because it is not narrowly tailored to any significant governmental interest and does not leave open adequate alternative channels of communication.

153.    The Traffic Regulations are facially overbroad because they are not narrowly tailored to any significant governmental interest and do not leave open adequate alternative channels of communication.

154.    Title 40 section 5104(f) and the Traffic Regulations are unconstitutionally vague insofar as § 5104(f) provides that persons may not "(1) parade, stand, or move in processions or assemblages [on the Capitol] Grounds; or (2) display [on the Capitol] Grounds a flag, banner, or device designed or adapted to bring into public notice a party, organization, or movement" while the Traffic Regulations allow "demonstration activity" in either groups of nineteen people or fewer without a permit or groups of twenty people or more with a permit.

155.    The Traffic Regulations are unconstitutionally vague insofar as they allow "demonstration activity" in either groups of nineteen people or fewer without a permit or groups of twenty people or more with a permit, on the one hand, while simultaneously prohibiting "[p]arades, assemblages and displays of flags, banners, or devices designed to bring into public notice a party, organization, or movement" unless authorized by the President of the Senate and the Speaker of the House of Representatives.

156.    Rev. Mahoney has no adequate remedy at law, has suffered, and will suffer serious and irreparable harm to his constitutional rights unless the Board is enjoined.

157.   Rev. Mahoney is entitled to declaratory relief and temporary, preliminary, and permanent injunctive relief invalidating and restraining the Board from violating his constitutional rights.

158.   Rev. Mahoney found it necessary to engage the services of private counsel to vindicate his rights under the law.  Rev. Mahoney is therefore entitled to an award of attorneys' fees and costs pursuant to 28 U.S.C. § 2412.

## FOURTH CAUSE OF ACTION
### Violation of Rev. Mahoney's Rights to Equal Protection as Guaranteed by the Fifth and Fourteenth Amendments to the United States Constitution

159.   Rev. Mahoney hereby incorporates by reference all other paragraphs of this Third Amended Complaint as though fully set forth herein.

160.   The Board's refusal to grant Rev. Mahony a permit to hold his proposed demonstration activity while allowing other demonstrations in the same area and similar areas constitutes a violation of Rev. Mahoney's rights to equal protection of the law as guaranteed by the Fifth and Fourteenth Amendments.

161.   Because speech and the exercise of religion are fundamental rights, the Board must demonstrate that its restrictions on speech satisfy strict scrutiny.

162.   The Board singled out Rev. Mahoney from among others similarly situated and his treatment was improperly motivated, *i.e.*, based on religion, the content of his speech, and his identity as a non-member of Congress, all of which are arbitrary classifications.

163.   The Board has impermissibly discriminated against Rev. Mahoney on the basis of speech- and religion-related activities in a public forum and will continue to impermissibly discriminate against Rev. Mahoney on these bases, and the Board's actions were not and are not narrowly tailored to serve compelling governmental interests.

43

J.A. 43

164.    The Board prohibited Rev. Mahoney's religious gathering while allowing non-religious gatherings, and the Board will continue to do so in the future.  The Board declined to enforce the Traffic Regulations against several large demonstrations that did not involve religious speech while it enforced them against him because of the religious content of his speech.

165.    The Board has impermissibly discriminated against Rev. Mahoney, and will continue to discriminate against Rev. Mahoney, on the ground of the content of his speech, his religion, and his identity as a non-member of Congress, and the Board's actions were not and are not narrowly tailored to serve substantial governmental interests.  The Board asserts that its justification for allowing certain other events to go forward on the Capitol Grounds is that members of Congress (and their staffs) are exempt from the Traffic Regulations and these events were "sponsored," "organized," or "advocated" for by a member of Congress (or their staff).  Even assuming the truth of these assertions, granting members of Congress (or their staff) preferential rights with respect to the Capitol Grounds, whether by granting a permit or by turning a blind eye to the lack of a permit, constitutes impermissible discrimination on the basis of content, religion, and identity as a non-member of Congress.

166.    For all relevant purposes, Rev. Mahoney is similarly situated to members of Congress and persons who hold events that are "sponsored," "organized," or "advocated" for by a member of Congress (or their staff).

167.    Rev. Mahoney has no adequate remedy at law, has suffered, and will suffer serious and irreparable harm to his constitutional rights unless the Board is enjoined.

168.    Rev. Mahoney is entitled to declaratory relief and temporary, preliminary, and permanent injunctive relief invalidating and restraining the Board from violating his constitutional rights.

169.   Rev. Mahoney found it necessary to engage the services of private counsel to vindicate his rights under the law.  Rev. Mahoney is therefore entitled to an award of attorneys' fees and costs pursuant to 28 U.S.C. § 2412.

## PRAYER FOR RELIEF

WHEREFORE, Rev. Mahoney prays this Honorable Court grant the following relief in his favor:

1.   Declaratory relief in the form of an order and declaratory judgment holding and declaring that 40 U.S.C. § 5104(f), the Traffic Regulations, the Board's permitting scheme, the Board's temporary closures of the Capitol Grounds, and the Board's acts and practices as alleged herein were, are, and will be unconstitutional on their face and as applied under the First, Fifth, and Fourteenth Amendments to the United States Constitution for the reasons set forth above;

2.   Declaratory relief in the form of an order and declaratory judgment holding and declaring that the Board's failure to allow Rev. Mahoney to conduct his proposed prayer events violated, violates, and will violate his rights under the First, Fifth, and Fourteenth Amendments to the United States Constitution for the reasons set forth above;

3.   Declaratory relief in the form of an order and declaratory judgment holding and declaring that 40 U.S.C. § 5104(f), the Traffic Regulations, the Board's permitting scheme, the Board's temporary closures of the Capitol Grounds, and the Board's acts and practices as alleged herein were, are, and will be unconstitutionally vague and overbroad under the First and Fifth Amendment to the United States Constitution for the reasons set forth above;

4.   Injunctive relief in the form of a temporary, preliminary, and permanent injunction requiring the Government, its agents, employees, and all persons acting in concert with them to not enforce 40 U.S.C. § 5104(f), the Traffic Regulations, the Board's permitting scheme, the

Board's temporary closures of the Capitol Grounds, and the Board's acts and practices as alleged herein for the reasons set forth above;

5.   Injunctive relief in the form of a temporary, preliminary, and permanent injunction requiring the Government, its agents, employees, and all persons acting in concert with them to permit or allow Rev. Mahoney to conduct his proposed prayer vigils and other proposed demonstration activity on the Capitol Grounds and to not interfere with such demonstration activity for the reasons set forth above;

6.   Injunctive relief in the form of a temporary, preliminary and permanent injunction preventing the Board, its officers, agents, employees, and all persons acting in concert with them from interfering in any manner with Rev. Mahoney's constitutional rights of free speech, assembly / association, due process of law, and equal protection at said demonstration activity for the reasons set forth above;

7.   Injunctive relief in the form of a temporary, preliminary, and permanent injunction requiring the Board, its agents, employees, and all persons acting in concert with them to publish or otherwise make public its restrictions on speech on the Capitol Grounds for the reasons set forth above;

8.   That the Court issue the requested injunctive relief without a condition of bond or surety or other security being required of Rev. Mahoney;

9.   An award of Rev. Mahoney's reasonable costs and attorneys' fees pursuant to 28 U.S.C. § 2412;

10.   That the Court retain jurisdiction of this matter for the purposes of enforcing the Court's order(s); and

11.   Such other relief as the Court deems necessary and proper.

Dated: October 18, 2022                  Respectfully submitted,

                                         By:/s/Joshua Wallace Dixon
                                         Joshua Wallace Dixon
                                         Mark Trammell*
                                         CENTER FOR AMERICAN LIBERTY
                                         1311 S. Main Street, Suite 302
                                         Mount Airy, MD 21771
                                         (703) 687-6200

                                         Harmeet K. Dhillon
                                         (D.C. Bar ID: CA00078)
                                         Mark P. Meuser
                                         (D.C. Bar ID: CA00081)
                                         Ronald D. Coleman*
                                         DHILLON LAW GROUP INC.
                                         177 Post Street, Suite 700
                                         San Francisco, CA 94108
                                         (415) 433-1700

                                         *Counsel for Plaintiff Patrick J. Mahoney*

                                         (*Pro hac vice* application forthcoming)

J.A. 47

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

REVEREND PATRICK J. MAHONEY,

4019 Duke of Gloucester Street
Fredericksburg, VA 22407

                  *Plaintiff*,


     v.


THE UNITED STATES CAPITOL POLICE
BOARD;

United States Capitol Police Board
Office of Professional Responsibility
119 D. Street, NE
Washington, D.C. 20510;


KAREN H. GIBSON, in her Official Capacity
as U.S. Senate Sergeant at Arms and
Doorkeeper and Chair, Capitol Police Board;

Karen H. Gibson
United States Capitol Police Board
U.S. Capitol
Room S-151
Washington, D.C. 20510;


WILLIAM J. WALKER, in his Official
Capacity as U.S. House of Representatives
Sergeant at Arms and Member, Capitol Police
Board;

William J. Walker
United States Capitol Police Board
U.S. Capitol
Room S-124
Washington, D.C. 20510;

Case No. 1:21-cv-02314

J.A. 48

J. BRETT BLANTON, in his Official Capacity
as Architect of the Capitol and Member, Capitol
Police Board;

J. Brett Blanton
United States Capitol Police Board
U.S. Capitol
Washington, D.C. 20510;

and

J. THOMAS MANGER, in his Official
Capacity as Chief of Police, Capitol Police, and
Ex-Officio Member, Capitol Police Board;

J. Thomas Manger
United States Capitol Police Board
119 D Street, NE
Washington, DC 20510,

                    *Defendants.*

## VERIFICATION

I, Reverend Patrick J. Mahoney, declare under penalty of perjury that the factual allegations

in the foregoing Third Amended Verified Complaint are true and correct.

Executed this 17th day of October, 2022

Rev. Patrick J. Mahoney

# EXHIBIT A

# TRAFFIC REGULATIONS

### FOR THE

# UNITED STATES CAPITOL GROUNDS



PROMULGATED BY
**THE CAPITOL POLICE BOARD**
UNITED STATES CAPITOL
WASHINGTON, D.C.


**FINAL PUBLICATION**


Amended
**FEBRUARY 17, 2019**

# CAPITOL POLICE BOARD

## UNITED STATES CAPITOL
## WASHINGTON, D.C.

### JUNE 1, 2014

**WHEREAS** it has been the long-standing intent and practice of Congress to retain exclusive control over the United States Capitol Buildings and Grounds;

**WHEREAS** said intent is reflected in the delegation of authority granted to the Capitol Police Board by Public Law 570, 79th Congress, approved July 31, 1946, as amended, which:

- VESTS the Capitol Police Board with exclusive charge and control of the regulation and movement of all vehicular and other traffic within Capitol Grounds, including parking and impounding of vehicles and limiting the speed thereof;

- AUTHORIZES AND EMPOWERS the Capitol Police Board to make and enforce all necessary regulations for such purposes;

- AUTHORIZES AND EMPOWERS the Capitol Police Board to prescribe penalties for violation of such regulations not to exceed a fine of $300 or imprisonment for not more than ninety (90) days;

- AUTHORIZES AND EMPOWERS the Capitol Police Board to promulgate and amend such regulations from time to time whenever the Board shall deem it necessary; and,

- PROVIDES THAT certain parts of the District of Columbia Traffic Act of 1925, as amended, for the violation of which specific penalties are provided in said Act, shall be applicable to Capitol Grounds.

**WHEREAS,** in the interest of securing public safety and for protection against personal injury or damage to property and while taking into account the unique nature, circumstances and law enforcement needs on Capitol Grounds;

**WHEREAS,** it is the sense of the Board that continuity with local traffic regulations is desired to the greatest extent possible:

**NOW THEREFORE, BE IT RESOLVED THAT**, pursuant to the authority granted to it by Public Law 570, 70th Congress, approved July 31, 1946, as amended, the Capitol Police Board hereby:

- RESCINDS the Traffic and Motor Vehicle Regulations for the United States Capitol Grounds (June 1, 1983) and any amendments made thereto;

- REVISES the Traffic and Motor Vehicle Regulations for the United States Capitol Grounds by updating existing provisions and providing for specific traffic regulations unique to Capitol Grounds;

- RENAMES the Traffic and Motor Vehicle Regulations for the United States Capitol Grounds to "Traffic Regulations for the United States Capitol Grounds," to reflect the inclusion of pedestrian and other miscellaneous vehicle regulations;

- DIRECTS the Executive Assistant of the Capitol Police Board to publish the Capitol Police Board Code of Traffic Regulations for the United States Capitol Grounds in conformance with 2 U.S.C. § 1969(c);

Adopted by the Capitol Police Board by unanimous vote on August 13, 2013

EFFECTIVE DATE: This revised Capitol Police Board Code of Traffic Regulations for the United States Capitol Grounds is hereby adopted and shall become effective after the expiration of ten days after the date of publication in one of more of the daily newspapers published in the District of Columbia at which time the existing traffic regulations shall no longer be in effect and shall be rescinded.

# CHAPTER 12
# DEMONSTRATIONS AND SPECIAL EVENTS

## § 12.1. DEMONSTRATION ACTIVITY

### §12.1.10. DEFINITION

Demonstration activity is defined as any protest, rally, march, vigil, gathering, assembly, projecting of images or similar conduct engaged in for the purpose of expressing political, social, religious or other similar ideas, views or concerns protected by the First Amendment of the United States Constitution.

### §12.1.20. APPLICABILITY

The provisions of this chapter shall be applicable to any one (1) person or group of persons engaged in demonstration activity on Capitol Grounds. The provisions of this chapter shall apply equally to all demonstrators, regardless of viewpoint.

### §12.1.30. SPECIAL EVENTS

Certain events on Capitol Grounds are not considered "demonstrations" for the purposes of this chapter. They are authorized as follows:

**a.** JOINT RESOLUTION. Parades, assemblages and display of flags, banners or devices designed to bring into public notice a party, organization or movement are not permitted on Capitol Grounds unless concurrently authorized by the President of the Senate and the Speaker of the House of Representatives. [31]

**b.** BAND CONCERTS. Concerts performed by bands that are in the service of the federal government, at times which will not interfere with Congress, as authorized by the Architect of the Capitol.[32]

**c.** LOUISIANA AVENUE. Parades, processions or assemblages on that part of Louisiana Avenue located within Capitol Grounds. The Capitol Police Board grants the Mayor of the District of Columbia the authority to permit the use of Louisiana Avenue for these events.[33]

**d.** TOUR GROUPS. A group organized for the purpose of sightseeing and visiting the Capitol.

**e.** CEREMONIAL EVENTS AND ENTERTAINMENT. Any small-scale event such as a school band, musical presentation or military reenlistment ceremony. Any

---

[31] 40 U.S.C. § 5104(f) ("Parades, Assemblages and Display of Flags"); 40 U.S.C. § 5106(a) ("Authority to Suspend") *See* Appendix F.

[32] 40 U.S.C. § 5107 ("Concerts on Grounds"). *See* Appendix F.

[33] 40 U.S.C. § 5106(c) ("Authority of Mayor to Permit Use of Louisiana Avenue"). *See* Appendix F.

group wishing to engage in this type of activity must apply for and receive prior written approval from the Board. These events shall only be conducted in assigned areas and must comply with all restrictions, limitations and conditions as determined by the Board.

## § 12.2. GENERAL REQUIREMENTS

### §12.2.10. PERMISSIBLE DEMONSTRATION AREAS

Demonstration activity is allowed in designated areas as indicated on the "United States Capitol Grounds Demonstration Areas Map," as amended.[34]

### §12.2.20. PROHIBITED DEMONSTRATION AREAS

No person or group of any size may engage in demonstration activity on the steps of the United States Capitol, on the steps of any building on Capitol Grounds or in any area otherwise closed or restricted for official use. In addition, projecting of images on any building on Capitol Grounds shall not be permitted.

## § 12.3. GROUPS UNDER TWENTY

### §12.3.10. NO PERMIT REQUIRED

No person or group of less than twenty (20) persons shall be required to obtain a permit.

### §12.3.20. AVAILABILITY

Space for one (1) person or group of less than twenty (20) persons is available on a first-come, first-served basis, subject to the provisions of this chapter.

### §12.3.30. PERMIT ENCOURAGED

One (1) person or group of less than twenty (20) persons that desires to secure a specific demonstration area is encouraged to file an application for a permit. A permit holder will be given priority over any person or group occupying a demonstration area not in possession of a permit. The Board may remove or relocate any person or group of less than twenty (20) persons not in possession of a permit to accommodate permitted demonstration activity or special event as authorized by §12.1.30.

### §12.3.40. PROHIBITIONS

A person or group of less than twenty (20) persons shall not engage in the following:

    **a.** <u>SEGMENTING FROM THE GROUP</u>. A person or group of less than twenty (20) persons may engage in demonstration activity without a permit provided that the demonstration activity is not merely a segment of

---

[34]   *See* Appendix G. Approved December 5, 2012.

the same group whose complement would consist of twenty (20) or more persons.

**b.** <u>INTERFERENCE</u>. No person or group of less than twenty (20) persons shall engage in demonstration activity that audibly or physically interferes with the demonstration activity of another person or group.

**c.** <u>DENSITY</u>. No person or group of less than twenty (20) persons shall occupy an area in which the density exceeds 4.95 square feet per person, including props and equipment.[35] In no instance shall the per person density of any area exceed that set by the Federal Emergency Management Agency.

**d.** <u>SEVEN DAY LIMITATION</u>. No person or group of less than twenty (20) persons shall engage in demonstration activity for a period that exceeds more than seven (7) consecutive days.

**e.** <u>CONTINUOUS DAILY DEMONSTRATION</u>. No person or group of less than twenty (20) persons shall engage in demonstration activity having a duration of more than twenty-four (24) consecutive hours, including clean-up and the set-up and take down of props and equipment.[36]

### §12.3.50. APPLICABILITY OF OTHER SECTIONS.

With the exception of §12.4, any person or group of less than twenty (20) persons is required to adhere to the provisions of this chapter.

## § 12.4. GROUPS OVER TWENTY

### §12.4.10. PERMIT REQUIRED FOR GROUPS OF TWENTY OR MORE

No group of twenty (20) persons or more shall engage in demonstration activity on Capitol Grounds except pursuant to the terms of a permit issued by the Capitol Police Board.

### §12.4.20. PERMIT APPLICATIONS

**a.** <u>ADVANCE NOTICE</u>. All applications for permits shall be submitted in writing to the Capitol Police Board.[37] An application shall be submitted in writing so as to be received by the Capitol Police Board at least ten (10)

---

[35] "Special Events Contingency Planning," Federal Emergency Management Agency (Mar. 2005).

[36] *Community for Creative Non-Violence v. Carvino, et al.,* 660 F. Supp 744 (D.D.C. 1987); *Community for Creative Non-Violence v. Kerrigan, et.al.,* 865 F.2d 382 (D.C. App. 1989). *See* Appendix H for all related case law.

[37] The Special Events Division of the United States Capitol Police has been designated to receive and process applications. Applications can be obtained by calling (202) 224-8891 or visiting www.uscapitolpolice.gov.

business days in advance of the proposed demonstration activity.

**b.** <u>CONTENTS</u>. Permit applicants shall provide the following:

    1. Requested area of Capitol Grounds;

    2. Date, time, duration, and nature of the demonstration activity;

    3. Estimated number of participants;

    4. Sponsoring person or organization;

    5. Requested props and equipment; and,

    6. Name, address, telephone number and signature of applicant.

**c.** <u>WAIVER</u>. The Board may waive notice or reduce the number of days of advance notice if it determines that unforeseen or exceptional circumstances exist.

### §12.4.30. PROCESSING APPLICATIONS AND ISSUANCE OF PERMITS

**a.** <u>APPROVAL</u>. The Capitol Police Board shall process applications in order of their receipt. Properly completed applications will be given priority over applications that are defective.

**b.** <u>ISSUANCE</u>. The Board shall issue a permit authorizing peaceable and orderly demonstration activity upon proper and timely application.

**c.** <u>CONTENTS</u>. Each permit shall clearly identify:

    1. The sponsoring person and organization;

    2. The area on Capitol Grounds where the permitted demonstration activity is to take place;

    3. The date, time and duration of the demonstration activity;

    4. The nature of the event and detailed description of the activity; and,

    5. The number of participants.

**d.** <u>TACIT APPROVAL</u>. Should the Board fail to act on a properly completed and timely filed application within forty-eight (48) hours prior to the date of the proposed demonstration activity, such application shall be deemed approved by the Board.

### §12.4.40. TERMS AND CONDITIONS

In addition to any additional terms as set forth in the permit, no permit shall be issued that authorizes the following:

**a.** <u>AREA</u>. No permit shall authorize a group to demonstrate in more than one (1) area per event simultaneously.

**b.** <u>DENSITY</u>. No permit shall be issued that would exceed a density of five (5) square feet per person in

the requested demonstration area, including props and equipment.

**c.** SEVEN DAY LIMITATION. No permit shall be issued for a period of more than seven (7) consecutive days.

**d.** CONTINUOUS DAILY DEMONSTRATION PRO-HIBITED. No permit shall authorize demonstration activity having a duration of more than twenty-four (24) consecutive hours, including clean-up and the set up and take down of props and equipment.[38]

### §12.4.50. GROUPS TO REMAIN IN ASSIGNED AREAS

All groups are required to remain in their assigned demonstration areas throughout the course of the demonstration activity. The same group may not hold a permit to more than one demonstration area at the same time.

### §12.4.60. REVOCATION FOR NON-COMPLIANCE OR FOR CAUSE

In any case in which the terms of the permit are violated, such permit may be revoked by the Capitol Police Board. The Board is authorized to revoke a permit if it determines that continuation of demonstration activity is likely to result in bodily harm or death to an individual, damage to or destruction of any real or personal property or that a breach of the peace is imminent and good order cannot otherwise be maintained.

### § 12.5. PROPS AND EQUIPMENT

The following provisions apply to all persons or groups of persons bringing props and equipment onto Capitol Grounds.

### §12.5.10. GENERAL

**a.** DEFINITION. Props and equipment include items such as stands, lecterns, sound amplification equipment, chairs, tables, portable sanitary facilities, press and news facilities or other similar items that are reasonably necessary as an integral part of demonstration activity.

**b.** HEIGHT RESTRICTION. No single prop, piece of equipment or combination thereof may exceed fifteen (15) feet in height.

**c.** STAGES, RISERS AND PLATFORMS. No stage, riser or platform may exceed two (2) feet in height.

**d.** UNATTENDED PROPS AND EQUIPMENT. No prop or piece of equipment shall be left unattended while on Capitol Grounds.

**e.** REMOVAL. All props and equipment must be capable of immediate removal.

---

[38]   *Community for Creative Non-Violence v. Kerrigan, et.al.*, 660 F. Supp 744 (D.D.C. 1987); 865 F.2d 382 (D.C. App. 1989). *See* Appendix H for all related case law.

**f.** <u>TWENTY FOUR HOUR LIMITATION</u>. Props and equipment must be removed frm Capitol Grounds at least once every consecutive twenty-four (24) hour period.[39]

**g.** <u>CONCLUSION</u>. Demonstration activity is not considered concluded until all props and equipment are removed from Capitol Grounds within the permitted time.

## §12.5.20. ADDITIONAL REQUIREMENTS FOR PERMIT APPLICANTS

**a.** All permit applicants are required to list props and equipment in their application.

**b.** Permit applicants must provide a description and the intended use of each such item in the permit application.

**c.** Any stage, riser or platform must be clearly identified in the permit application and receive Board authorization prior to use.

**d.** Permit holders are subject to any additional requirements pertaining to props and equipment as determined by the Board and set forth in the permit.

# § 12.6. SIGNS, BANNERS AND PLACARDS

Signs, banners and placards are permissible on Capitol Grounds provided the supports for these items have dull ends, do not exceed ¾ of an inch at their widest point and cannot in any way be construed as a weapon. No nails, screws or bolt-type fastening devices may be protruding from the supports.

# § 12.7. TEMPORARY STRUCTURES

No temporary structure of any kind may be erected on Capitol Grounds. Tents, cabanas, canopies and all other types of covered or enclosed structures are expressly prohibited.[40] No object shall be tied, fastened or suspended to any tree, pole or other landscape or architectural feature on Capitol Grounds.

# § 12.8. AMPLIFICATION AND OTHER NOISE DISTURBANCES

## §12.8.10. AMPLIFICATION EQUIPMENT

Amplification equipment is not permitted on the Lower West Front Terrace or any other location on Capitol Grounds as determined by the Board.

---

[39]    *Id.*

[40]    *See also* §16.6 ("Camping").

### §12.8.20. SOUND PROJECTION

All sound amplification equipment must be projected away from the Capitol and all other Congressional office buildings.

### §12.8.30. UNAMPLIFIED DISTURBANCES

No individual may utter loud, threatening or abusive language or engage in disorderly or disruptive conduct at any place on Capitol Grounds that interferes with any business being conducted in the Capitol or in any of the office building on Capitol Grounds at any time, including during periods of recess.

## § 12.9. ROAD RACES

### §12.9.10. DEFINITION

A road race is any type of sponsored running or cycling event, such as a marathon or triathlon.

### §12.9.20. PERMIT REQUIRED FROM NEIGHBORING AGENCY

No road race will be allowed to traverse Capitol Grounds when the route includes District of Columbia or National Park Service land unless a permit from the Metropolitan Police and National Park Service has been issued.

### §12.9.30. SUNDAYS

Road races are permitted on Sundays only.

### §12.9.40. NO RE-TRACING ON CAPITOL GROUNDS

Road races shall only pass through Capitol Grounds once; there will be no re-tracing of the route on Capitol Grounds.

### §12.9.50. CAPITOL SQUARE

A road race may not occupy more than two (2) streets that comprise Capitol Square.

### §12.9.60. AUTHORIZED ROUTE

Race coordinators must submit documentation that lays out the route of the race. Race participants must remain on the authorized route throughout the course of the race.

## § 12.10. MARCHES

### §12.10.10. PRIOR PERMIT REQUIRED

No march will be authorized without an existing permit from both the Metropolitan Police Department and the National Park Service.

### §12.10.20. AUTHORIZED ROUTE

Participants must submit documentation that lays out the route and remain on the authorized route throughout the march. Unless otherwise authorized by the Board, all marchers are to remain on sidewalks.

## § 12.11. DAMAGE TO CAPITOL GROUNDS

### §12.11.10.  RESTORATION OF GROUNDS

Any person or group of persons that engages in demonstration activity on Capitol Grounds shall restore the grounds to same condition that existed prior to that demonstration activity.

## § 12.12. PERSONAL ACTIVITIES

Wedding ceremonies, graduation ceremonies and other events of a personal nature are not permitted on Capitol Grounds.

## § 12.13. ADDITIONAL CONDITIONS

The Board reserves the right to impose additional reasonable time, place and manner restrictions on any demonstration activity consistent with this chapter in the interest of safety and in order to minimize the obstruction or impediment of vehicular and pedestrian traffic through or within the Capitol Grounds.

# APPENDIX G
# DEMONSTRATION MAP



# EXHIBIT B

CP-4U

# UNITED STATES CAPITOL POLICE
## Guidelines for Conducting an Event on United States Capitol Grounds

The guidelines described below, in accordance with the Traffic Regulations for U.S. Capitol Grounds, are to ensure that events held inside the boundaries of U.S. Capitol Grounds are conducted in a manner that protects public health and safety, yet ensures that the Congressional community can fulfill its legislative responsibility.

Demonstration Activity is defines as: Any demonstrating, parading, picketing, speech making, holding of vigils, sit-ins, or other activities conducted for the purpose of demonstrating approval or disapproval of governmental policies or practices (or the lack thereof), expressing a view on public issues, or bringing into public notice any issue or other matter. Demonstration activity is allowed in designated areas as indicated on Appendix B: "United States Capitol Grounds Demonstration Areas Map."

The U.S. Capitol Grounds must be in compliance with the Americans with Disabilities Act (ADA) as applied by the Congressional Accountability Act. As such, any sponsoring person and/or organization that is granted a permit to engage in a demonstration or organized activity on U.S. Capitol Grounds **shall** maintain and not block in any way all accessible routes (pedestrian walkways). Further, the sponsoring person and/or organization agrees to provide all people with disabilities equal access to the activity as required by the ADA.

**Prohibited Areas:** Groups of any size are prohibited from demonstrating in the following areas:
1. Inside any Congressional Buildings
2. On the steps of the United States Capitol
3. On the steps of any building on Capitol Grounds
4. In any area otherwise closed or restricted for official use
5. In roadways or any area routinely used for vehicular traffic
6. Prohibited areas as identified in the "United States Capitol Grounds Demonstration Areas Map"

The following conditions apply to all activities occurring on U.S. Capitol Grounds and permitted by the Capitol Police Board, to ensure:
1. The safety and convenience of all people who exercise their First Amendment right to free expression.
2. The safety and convenience of all people visiting Congressional Office Buildings as well as the U.S. Capitol Buildings and Grounds.
3. The orderly conduct of Congressional business.

**Applications:**
1. Application to engage in a demonstration or other organized activity on U.S. Capitol Grounds may be submitted in the following manner:
   a. By mail to the:
      U.S. Capitol Police Special Events Section Room 102, USCP Headquarters
      119 D Street NE
      Washington, DC 20510

United States Capitol Police Special Events Section

119 D Street NE, Room 101
Washington, DC 20510
Office: (202) 224-8891 / Fax: (202) 228-2429
Office Hours: M–F, 0700–1800
Watch Commander: (202) 225-0908 (25 hours)
J.A. 64
Page 1 of 5

(Page 67 of Total)

## UNITED STATES CAPITOL POLICE
### Guidelines for Conducting an Event on United States Capitol Grounds

     **NOTE**: Mail may be delayed up to two (2) weeks due to security procedures.
b. In person to the U.S. Capitol Police (USCP) Special Events Section at the address listed above, between the hours of 7:00 am and 6:00 pm, Monday through Friday
c. By fax to (202) 228-2429

**Timeliness of Application:** Applications must be submitted at least **TEN (10) days** in advance of the activity to guarantee processing. Applications will be accepted up to one (1) year in advance. Additionally, demonstration applications must satisfy all requirements stated herein before processing can be completed; therefore, it is imperative that the spokesperson responds promptly to all queries from the Special Events Coordinator.

**Number of Participants:** Public safety, primarily based on the amount of space available in the chosen area, will dictate the maximum number of participants allowed in the event. Groups of fewer than twenty (20) persons do not require a permit; however, they are encouraged to notify USCP in advance of the demonstration activity so that available space can be fairly and appropriately allocated. An approved permit will give you or your group priority over a subsequent application by another person or group, or a group demonstrating without a permit.

**Duration of Activity:** Permitted activity may not exceed twenty-four (24) consecutive hours, or seven (7) consecutive days, including time for set-up and clean-up. When completing the application, spokespersons should include set-up and clean-up time in the time requested.

**Signs, Banners, and Placards:** Signs, banners, and placards are permitted as a part of a permitted activity. All supports for these items must not exceed ¾ of an inch at their largest point, have dull ends, and cannot in any way be construed as a weapon. There can be no nails, screws, or bolt-type fasteners protruding from the supports. The following activity is prohibited by law:
1. Offering any item for sale
2. Soliciting contributions
3. Any form of advertising
   **NOTE: *Any display of signs, banners, placards, and related items is strictly prohibited inside all Congressional Buildings***.

**Props and Equipment:** Props, equipment, and other movable facilities reasonably necessary for, and integral to, the activity shall be permitted, provided that prior notice is given on the application and the size, location, and structure of the items conforms to the reasonable conditions, limitations, and restrictions provided for by the Capitol Police Board. These include, but are not limited to:
1. Chairs
2. Tables
3. Stages, risers, and platforms (maximum 2 feet in height)
4. Audio/visual equipment (maximum extension is 13.5 feet wide by 9 feet high)
5. Other props and equipment (maximum of fifteen (15) feet in height)

United States Capitol Police Special Events Section

119 D Street NE, Room 101
Washington, DC 20510
Office: (202) 224-8891 / Fax: (202) 228-2429
Office Hours: M–F, 0700–1800
Watch Commander: (202) 225-0908 (25 hours)
J.A. 65
Page 2 of 5

(Page 68 of Total)

UNITED STATES CAPITOL POLICE
Guidelines for Conducting an Event on United States Capitol Grounds

---

The USCP reserves the right to limit the size, nature, and scope of props and equipment for reasons of safety and security. At no time will props or equipment be left unattended.

**Shelters:** The setting up, placement, or storage of a shelter (of any kind), or storage of camping equipment, tents, sleeping bags, bedrolls, or bedding is prohibited at all times.

**Temporary Structures:** Temporary structures of any kind may not be erected on Capitol Grounds. This includes tents, cabanas, canopies, and all other types of covered or enclosed structures. No objects shall be tied, nailed, stapled, affixed, fastened, or suspended to any tree, pole, or other landscape or architectural feature on Capitol Grounds.

**Sound Amplification Equipment:** Sound amplification is permitted. However, the sound must be controlled so that it does not disrupt the orderly business of the Congress or unreasonably disturb other persons who are exercising their First Amendment rights or those who are visiting the Capitol Grounds. All sound equipment must be furnished by the applicant and positioned so as to face away from the U.S. Capitol and all Congressional Office Buildings. Electrical power for sound equipment is available in the West Front Grassy Area and the Upper Senate Park. (See map attached to application.)

**Distribution of Literature:** Literature may be distributed to interested persons, at no charge, as a part of a permitted activity. Distribution of literature is prohibited inside the U.S. Capitol and all Congressional Office Buildings. Literature cannot contain promotional advertisements or solicitation.

**Solicitation:** It is prohibited at all times to offer any item for sale; or solicit fares, alms, or contributions; or display any form of advertising on Capitol Grounds.

**Condition of Grounds:** Immediately upon the scheduled conclusion of a permitted activity, all props, equipment, and facilities must be removed from Capitol Grounds. The spokesperson shall take such action as may be necessary so as to leave the space utilized by the activity in the same condition which existed immediately prior to the commencement of the activity.

It is prohibited at any time to climb, remove, or in any way injure any statue, seat, wall, fountain, light poles, elevator towers, or other erection or architectural feature, or any tree, shrub, or landscaping feature within the Capitol Grounds. No person may stand or otherwise enter upon any of the Capitol Visitor Center skylights, fountains, planters, walls, surface level air grates, and generators. In addition, projecting of images on any building on Capitol Grounds shall not be permitted.

**Marches:** Marches are permitted to pass through Capitol Grounds provided the march does not disrupt the orderly business of Congress or impede the equal access by others to the U.S. Capitol and all Congressional Office Buildings. When applying, applicants must identify the specific march route requested and also must provide a copy of a corresponding permit issued by either

United States Capitol Police Special Events Section

119 D Street NE, Room 101
Washington, DC 20510
Office: (202) 224-8891 / Fax: (202) 228-2429
Office Hours: M–F, 0700–1800
Watch Commander: (202) 225-0908 (25 hours)
J.A. 66
Page 3 of 5

(Page 69 of Total)

UNITED STATES CAPITOL POLICE
Guidelines for Conducting an Event on United States Capitol Grounds

the Metropolitan Police Department or the National Park Service. Marchers will be required to remain on sidewalks and obey all traffic signals and signs.

**Official Functions of the Congress**: In the event an official function of Congress is scheduled that conflicts with an already permitted activity, participants of the activity must clear the affected area prior to the start of the Congressional function, but may return in keeping with the permit guidelines after the function has concluded or departed Capitol Grounds.

**Filming and Photography**: The use of camera equipment to film or photograph on Capitol Grounds for private or other non-commercial use is permitted. Non-commercial documentary or historical filming is also permitted on a case-by-case basis. The use of tripods or other film or photography enhancement equipment is limited to grassy areas where pedestrian or vehicular traffic will not be impeded.

Commercial filming/photography is only allowed in specified areas of Capitol Grounds and must be preceded by submission of an application for a permit to engage in commercial filming/photography through the USCP Office of Special Events. Once a request for commercial filming/photography has received preliminary approval, a monetary fee for each date specified in the application will be required prior to the issuance of the permit. This fee is payable to the Architect of the Capitol at the following website: Pay.gov.

**Races**: Foot and bike races are permitted to pass through Capitol Grounds on Sundays only. Races must be conducted on one of the five pre-determined routes and must conform to the reasonable conditions, limitations, and restrictions set by the Capitol Police Board. Races shall only pass through Capitol Grounds once; there will be no re-tracing of the route on Capitol Grounds. The solicitation, collection, or transfer of monies (including but not limited to registration fees, as well as the display or use of commercial logos or related advertising or signage) is prohibited at all times on Capitol Grounds.

**Musical Presentations**: Musical presentations are not considered "demonstrations," however, can be permitted in the Upper Senate Park. On weekends, musical presentations are also allowed on the West Front as long as Congress is not in session. Musical presentations are to be small in scale events, such as school band presentations.

**Sleeping or Lying Down**: Sleeping or lying down is prohibited at all times on any paved or improved area including, but not limited to, streets, roads, sidewalks, steps, curbs, gutters, doorways, alcoves, and walls. Sleeping or lying down is prohibited on any unimproved (grassy) area of the Capitol Grounds from one-half (½) hour after sunset to one-half (½) hour before sunrise.

**Parking**: There are no parking or staging areas available for private automobiles, buses, or other vehicles on Capitol Grounds. Buses may utilize Garfield Circle, at the intersection of First Street and Maryland Avenue SW, or Union Station at 50 Massachusetts Avenue NE, to drop off passengers.

United States Capitol Police Special Events Section

119 D Street NE, Room 101
Washington, DC 20510
Office: (202) 224-8891 / Fax: (202) 228-2429
Office Hours: M–F, 0700–1800
Watch Commander: (202) 225-0908 (25 hours)
J.A. 67
Page 4 of 5

(Page 70 of Total)

# UNITED STATES CAPITOL POLICE
### Guidelines for Conducting an Event on United States Capitol Grounds

**<u>Prohibited Items</u>:** The following items are prohibited at all times on Capitol Grounds: any firearm, explosive, club, missile, chemical, or other incendiary device or other weapon. It is also prohibited to use or display any open flame including, but not limited to, ignited candles, torches, lanterns, or lamps. Flashlights and other battery-powered lights are permitted.

United States Capitol Police Special Events Section

119 D Street NE, Room 101
Washington, DC 20510
Office: (202) 224-8891 / Fax: (202) 228-2429
Office Hours: M–F, 0700–1800
Watch Commander: (202) 225-0908 (25 hours)
J.A. 68
Page 5 of 5

# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

**PATRICK J. MAHONEY,**

   **Plaintiff,**

    **v.**           **Civil Action No. 21-2314 (JEB)**

**UNITED STATES CAPITOL POLICE
BOARD,** *et al.*,

   **Defendants.**

## <u>ORDER</u>

For the reasons set forth in the accompanying Memorandum Opinion, the Court

ORDERS that:

1. Defendants' [71] Motion to Dismiss is GRANTED IN PART and DENIED IN PART;

2. Defendant U.S. Capitol Police Board is DISMISSED;

3. Plaintiff's as-applied challenges to past denials of demonstration permits; his as-applied
   challenges to future denials of demonstration permits not based on futility; and his due-
   process challenge to the Board's failure to publish temporary restrictions are
   DISMISSED WITHOUT PREJUDICE;

4. Defendants' [71] Motion for Summary Judgment is DENIED;

5. Plaintiff's [78] Motion to Strike is DENIED as moot; and

6. Defendants shall file an Answer to surviving claims by April 18, 2023.

/s/ *James E. Boasberg*
JAMES E. BOASBERG
Chief Judge

Date: April 4, 2023

2
J.A. 70

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| REVEREND PATRICK J. MAHONEY, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Civil Action No. 21-2314 (JEB) |
| ) | |
| UNITED STATES CAPITOL ) | |
| POLICE BOARD, *et al.*, ) | |
| ) | |
| Defendants. ) | |
| ) | |

**JOINT STATUS REPORT**

The individual members of the United States Capitol Police Board ("Defendants") and Reverend Patrick Maloney ("Plaintiff") (collectively "the parties") respectfully submit this Joint Status Report for the Court's consideration.  In support hereof, the parties respectfully proffer the following:

1.      Following the Court's ruling on Defendants' last dispositive motion, see ECF No. 80, Defendants' Answer or other response to Plaintiff's Third Amended Complaint is due on May 16, 2023.

2.      Defendants have approached Plaintiff about whether this case could be resolved or the issues narrowed by mediation.  Plaintiff has an interest in attempting to resolve this case or narrowing the issues through mediation.

3.      Thus, the parties jointly submit this Joint Status Report to apprise the Court of their discussions and to seek referral of the matter to a magistrate judge for the limited purpose of conducting a settlement conference.

4.      The parties further request that Defendants' deadline to respond to Plaintiffs Third Amended Complaint be stayed until fourteen days after the settlement conference, assuming the

J.A. 71

case does not resolve at the settlement conference.

Dated:  May 16, 2023

*By:/s/Joshua Wallace Dixon*
Joshua Wallace Dixon
Eric Sell
CENTER FOR AMERICAN LIBERTY
1311 S. Main Street, Suite 207
Mount Airy, MD 21771
(703) 687-6200

Harmeet K. Dhillon
(D.C. Bar ID: CA00078)
Mark P. Meuser
(D.C. Bar ID: CA00081)
Ronald D. Coleman*
DHILLON LAW GROUP INC.
177 Post Street, Suite 700
San Francisco, CA 94108
(415) 433-1700

*Counsel for Plaintiff Patrick J. Mahoney*


MATTHEW M. GRAVES, D.C. Bar #418052
United States Attorney

BRIAN P. HUDAK
Chief, Civil Division

/s/ *Kenneth Adebonojo*
KENNETH ADEBONOJO
Assistant United States Attorney
United States Attorney's Office
District of Columbia, Civil Division
601 D Street, N.W.
Washington, D.C.  20530
Telephone: (202) 252-2562
kenneth.adebonojo@usdoj.gov

*Counsel for the Defendants*

# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

**PATRICK J. MAHONEY,**

      **Plaintiff,**

      **v.**

**UNITED STATES CAPITOL POLICE
BOARD, *et al.*,**

      **Defendants.**

**Civil Action No. 21-2314 (JEB)**

## <u>ORDER OF REFERRAL</u>

Pursuant to the parties' joint request to refer this case to a Magistrate Judge for

mediation, the Court hereby ORDERS that:

1. This matter is referred to Magistrate Judge Upadhyaya for mediation.  On any filing

    related to mediation, the parties shall place the initials of Judge James E. Boasberg

    and the initials of Magistrate Judge Upadhyaya following the case number in the

    caption.  On any other filings in this case, the parties shall only place the initials of

    Judge James E. Boasberg after the case number;

2. Mediation shall occur through July 17, 2023;

3. The parties shall file a joint status report by July 17, 2023; and

4. Assuming mediation does not resolve the case, Defendants shall file their Answer or

    otherwise respond to the Third Amended Complaint no later than fourteen days after

    the conclusion of mediation.

J.A. 73

/s/ *James E. Boasberg*
JAMES E. BOASBERG
Chief Judge

Date: May 17, 2023

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| REVEREND PATRICK J. MAHONEY, | ) )  ) |
| Plaintiff, | ) ) |
| v. | ) )  ) |
| UNITED STATES CAPITOL POLICE BOARD, *et al.*, | ) ) ) |
| Defendants. | ) ) ) |

Civil Action No. 21-2314 (JEB)

**JOINT STATUS REPORT**

The individual members of the United States Capitol Police Board ("Defendants") and Reverend Patrick Maloney ("Plaintiff") (collectively "the parties") respectfully submit this Joint Status Report for the Court's consideration.  In support hereof, the parties respectfully proffer the following:

1.     Pursuant to mediation referral by this Court, *see* ECF No. 85, and the Magistrate Judge's Mediation Order, *see* ECF No. 86, the parties engaged in mediation on July 27, 2023, under the guidance of Magistrate Judge Moxila A. Upadhyaya, and that mediation has been ongoing since then, including a recent session on September 20, 2023.

2.     In that session, the parties agreed to a conditional partial settlement in principle and have since agreed on a term sheet, with the partial settlement being conditioned upon arrival at mutually agreeable stipulations of fact and judicial notice to resolve the single reserved claim that was not settled and that must be litigated. Pending further guidance from the Magistrate Judge, the parties plan to memorialize this partial settlement into a final written agreement once the condition is satisfied. Most significant for the Court's purposes, this conditional partial settlement in principle provides that the parties will litigate a single reserved claim upon finalization of the

J.A. 75

written settlement agreement. This claim will be litigated as a matter of law based upon the aforementioned stipulations. The parties are working diligently to arrive at mutually agreeable stipulations, which will satisfy the condition to the partial settlement. There is also a second reserved claim, but that claim was previously dismissed by this Court and may only be further litigated on appeal, if any.

3.    The parties respectfully ask the Court to allow them additional time to arrive at mutually agreeable stipulations and memorialize their agreement to preserve the settlement in principle.

4.    The parties thank the Magistrate Judge for her time and effort in conducting this mediation, and for the Court's patience as the parties attempt to work through this conditional partial settlement.

5.    The parties jointly propose filing another Joint Status Report no later than November 1, 2023. Depending on the length of the imminent lapse in government funding and government shutdown, this will hopefully allow the parties time to prepare and present to the Court the mutually agreeable stipulations and a final written agreement.


Dated:  Sept. 29, 2023              *By:/s/Joshua Wallace Dixon*
                                    Joshua Wallace Dixon
                                    Eric Sell
                                    CENTER FOR AMERICAN LIBERTY
                                    1311 S. Main Street, Suite 207
                                    Mount Airy, MD 21771
                                    (703) 687-6200

                                    Harmeet K. Dhillon
                                    (D.C. Bar ID: CA00078)
                                    Mark P. Meuser
                                    (D.C. Bar ID: CA00081)
                                    Ronald D. Coleman*
                                    DHILLON LAW GROUP INC.

2

177 Post Street, Suite 700
San Francisco, CA 94108
(415) 433-1700

*Counsel for Plaintiff Patrick J. Mahoney*

\*       \*       \*

MATTHEW M. GRAVES, D.C. Bar #418052
United States Attorney

BRIAN P. HUDAK
Chief, Civil Division

/s/ *Kenneth Adebonojo*
KENNETH ADEBONOJO
Assistant United States Attorney
United States Attorney's Office
District of Columbia, Civil Division
601 D Street, N.W.
Washington, D.C. 20530
Telephone: (202) 252-2562
kenneth.adebonojo@usdoj.gov

*Counsel for the Defendants*

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| REVEREND PATRICK J. MAHONEY, | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) ) | Civil Action No. 21-2314 (JEB) |
| UNITED STATES CAPITOL POLICE BOARD, *et al.*, | ) ) ) | |
| Defendants. | ) ) ) | |

**JOINT STATUS REPORT**

The individual members of the United States Capitol Police Board ("Defendants") and Reverend Patrick Mahoney ("Plaintiff") (collectively "the parties") respectfully submit this Joint Status Report for the Court's consideration.  In support hereof, the parties respectfully proffer the following:

1.     The Court adopted the parties' last Joint Status Report, *see* ECF No. 88, and directed the parties to file another Joint Status Report by today.  *See* Minute Order entered on October 2, 2023.  The parties had reported partial success in mediation and a proposal to litigate the remaining narrow issue without discovery and on a stipulated set of facts.

2.     To that end, last month Plaintiff provided to Defendants a twenty-page document containing proposed stipulations of fact as well as forty photographic exhibits. The stipulations and exhibits require in-depth review.  Defendants are reviewing Plaintiff's proposed stipulations and exhibits and expect to have responses soon.

3.     Thus, the parties respectfully propose that the Court permit them to file another Joint Status Report no later than December 1, 2023, to allow Defendants to complete their review of Plaintiff's proposed stipulations and exhibits, provide their responses to Plaintiff, and for the

J.A. 78

parties to engage in any necessary follow-up.

    4.    Barring unforeseen circumstances, the parties anticipate that the additional time will also allow them time to prepare and present to the Court the mutually agreeable stipulations and a final written agreement with the Joint Status Report.

Dated:  November 1, 2023

                            *By:/s/Joshua Wallace Dixon*
                            Joshua Wallace Dixon
                            Eric Sell
                            CENTER FOR AMERICAN LIBERTY
                            1311 S. Main Street, Suite 207
                            Mount Airy, MD 21771
                            (703) 687-6200

                            Harmeet K. Dhillon
                            (D.C. Bar ID: CA00078)
                            Mark P. Meuser
                            (D.C. Bar ID: CA00081)
                            Ronald D. Coleman*
                            DHILLON LAW GROUP INC.
                            177 Post Street, Suite 700
                            San Francisco, CA 94108
                            (415) 433-1700

                            *Counsel for Plaintiff Patrick J. Mahoney*

                            MATTHEW M. GRAVES, D.C. Bar #418052
                            United States Attorney

                            BRIAN P. HUDAK
                            Chief, Civil Division

                            /s/ *Kenneth Adebonojo*
                            KENNETH ADEBONOJO
                            Assistant United States Attorney
                            United States Attorney's Office
                            District of Columbia, Civil Division
                            601 D Street, N.W.
                            Washington, D.C.  20530
                            Telephone: (202) 252-2562
                            kenneth.adebonojo@usdoj.gov

                            *Counsel for the Defendants*

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| REVEREND PATRICK J. MAHONEY, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Civil Action No. 21-2314 (JEB) |
| ) | |
| UNITED STATES CAPITOL ) | |
| POLICE BOARD, *et al.*, ) | |
| ) | |
| Defendants. ) | |
| ) | |

**JOINT STATUS REPORT**

The individual members of the United States Capitol Police Board ("Defendants") and Reverend Patrick Mahoney ("Plaintiff") (collectively "the parties") respectfully submit this Joint Status Report for the Court's consideration.  In support hereof, the parties respectfully proffer the following:

1.      The Court adopted the parties' last Joint Status Report, *see* ECF No. 89, and directed the parties to file another Joint Status Report by today, December 1, 2023.  *See* Minute Order entered on November 2, 2023.  The parties previously reported partial success in mediation and a proposal to litigate the remaining narrow issue without discovery and on a stipulated set of facts.

2.      The parties are very close to agreement on the stipulated set of facts.  Barring unforeseen circumstances, the parties anticipate arriving at such an agreement no later than December 8, 2023.

3.      On the assumption that the parties will soon arrive at such an agreement—and, thus, the condition to settlement will soon be satisfied—Plaintiff has drafted (1) a proposed settlement agreement, (2) a proposed order of the Court effecting the settlement, and (3) a proposed joint

J.A. 80

motion seeking entry of the proposed motion effecting the settlement.  Today, Plaintiff provided those proposed documents to Defendants for their review. Once Defendants have reviewed and approved those documents, the parties will jointly submit the motion for entry of the proposed order effecting the  settlement.  The order will, among other things, dismiss Plaintiff's claims that are being resolved by settlement and set the terms under which Plaintiff's claims that are not being resolved by settlement may proceed.

4.      The parties respectfully propose that the Court set a deadline for them to file the joint motion for entry of the proposed order effecting the settlement of December 28, 2023.[1] Barring unforeseen circumstances, this should be sufficient time to allow the parties to finalize the stipulated set of facts and allow Defendants time to review the (1) proposed settlement agreement, (2) proposed order of the Court effecting the settlement, and (3) proposed joint motion seeking entry of the proposed motion.

5.      If the parties need additional time to finalize these documents, they will work together in an effort to jointly propose an alternate deadline.

Dated:  December 1, 2023

By:/s/Joshua Wallace Dixon
Joshua Wallace Dixon
Eric Sell
CENTER FOR AMERICAN LIBERTY
1311 S. Main Street, Suite 207
Mount Airy, MD 21771
(703) 687-6200

Harmeet K. Dhillon
(D.C. Bar ID: CA00078)
Mark P. Meuser
(D.C. Bar ID: CA00081)

---

[1] The terms of the conditional settlement between the parties require Defendants to accomplish certain acts by December 31, 2023. By agreeing to the deadline set forth in the text, Plaintiff is not waiving any rights he has under the settlement.

2

Ronald D. Coleman*
DHILLON LAW GROUP INC.
177 Post Street, Suite 700
San Francisco, CA 94108
(415) 433-1700

*Counsel for Plaintiff Patrick J. Mahoney*

MATTHEW M. GRAVES, D.C. Bar #418052
United States Attorney

BRIAN P. HUDAK
Chief, Civil Division

/s/ *Kenneth Adebonojo*
KENNETH ADEBONOJO
Assistant United States Attorney
United States Attorney's Office
District of Columbia, Civil Division
601 D Street, N.W.
Washington, D.C.  20530
Telephone: (202) 252-2562
kenneth.adebonojo@usdoj.gov

*Counsel for the Defendants*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **REVEREND PATRICK J. MAHONEY,** | |
| *Plaintiff*, | **Civil Action No. 21-2314 (JEB)** |
| **v.** | |
| **KAREN H. GIBSON, in her Official Capacity as U.S. Senate Sergeant at Arms and Doorkeeper and Chair, United States Capitol Police Board; WILLIAM P. MCFARLAND, in his Official Capacity as U.S. House of Representatives Sergeant at Arms and Member, United States Capitol Police Board; CHERE REXROAT, in her Official Capacity as Acting Architect of the Capitol and Member, United States Capitol Police Board; and J. THOMAS MANGER, in his Official Capacity as Chief of Police, United States Capitol Police and Ex-Officio Member, United States Capitol Police Board,** | **MOTION FOR ENTRY OF PROPOSED CONSENT DECREE AND ORDER OF PARTIAL DISMISSAL** |
| *Defendants*. | |

The parties hereby jointly move the Court for Entry of their Proposed Consent Decree and Partial Order of Dismissal. A copy of the Proposed Consent Decree and Partial Order of Dismissal is attached hereto as Exhibit A. For the following reasons, the Court should grant the motion and enter the Proposed Consent Decree and Proposed Order of Dismissal.

### <u>BACKGROUND</u>

On August 31, 2021, Plaintiff Rev. Mahoney filed this action (the "Lawsuit"), which is now pending against Defendants KAREN H. GIBSON, in her Official Capacity as U.S. Senate Sergeant at Arms and Doorkeeper and Chair of the United States Capitol Police Board (the "Board"), WILLIAM P. MCFARLAND, in his Official Capacity as U.S. House of Representatives

Sergeant at Arms and Member of the Board, CHERE REXROAT, in her Official Capacity as Acting Architect of the Capitol and Member of the Board, and J. THOMAS MANGER, in his Official Capacity as Chief of Police, United States Capitol Police and Ex-Officio Member of the Board (collectively "Defendants"), alleging, among other things, that the Traffic Regulations for the United States Capitol Grounds, Amended February 17, 2019 (the "Traffic Regulations") violated the First and Fifth Amendments to the United States Constitution in several respects as set forth in Rev. Mahoney's Complaint and subsequent amendments thereto, culminating in the Third Amended Complaint (Dkt. 69).

On April 4, 2023, the Court partially granted Defendants' Motion to Dismiss, dismissing, among other things, Rev. Mahoney's claim that allowing the Board to regulate speech on the Capitol Grounds by way of temporary restrictions, including but not limited to Board Orders, that are not published or otherwise made known to the general public violates the Due Process Clause of the Fifth Amendment (the "Board Order Due Process Claim").[1]

On July 27, 2023 and September 20, 2023, the Parties mediated this dispute before Magistrate Judge Moxila A. Upadhyaya, where they reached a partial settlement of the Lawsuit in principle, which partial settlement was conditioned upon the Parties arriving at a stipulated set of facts to govern Rev. Mahoney's unsettled claim that the "no-demonstration zone" around the Capitol Building violates the First, Fifth, and Fourteenth Amendments (the "'No Demonstration Zone' Claim").[2]

The principal terms of the conditional settlement are listed below:

---

[1] This claim is alleged in Count III of the Third Amended Complaint. Count III also contains other claims that the parties are asking the Court to dismiss.

[2] This claim is alleged in Counts I, II, and IV of the Third Amended Complaint. Counts I, II, and IV also contain other claims that the parties are asking the Court to dismiss.

2

1.      The Board shall, no later than December 31, 2023, amend the Traffic Regulations as follows (however, Rev. Mahoney acknowledges the Board can still impose temporary security restrictions consistent with the First Amendment):

    a.   To provide that Members of Congress are exempt from Section 12 of the Traffic Regulations, but only for demonstration activity conducted by them that meets all three of the following requirements: (a) the demonstration activity is activity in which the Member is engaging in his or her official capacity; (b) the demonstration activity is activity that the Member has organized or sponsored; and (c) if persons other than the organizing or sponsoring Member(s) are participating in the demonstration activity, the Member(s) must personally be in attendance at the demonstration activity at all times for the exemption to last. If the organizing or sponsoring Member(s) departs, the demonstration activity will immediately be subject to Section 12 of the Traffic Regulations. This provision specifically precludes an exemption when a Member of Congress merely advocates for demonstration activity organized or sponsored by others.

    b.   To change the size of the group allowed to engage in demonstration activity without a permit from 19 people to 30 people (Traffic Regulations § 12.3, *et seq.*). This change authorizes demonstration activity without a permit in groups of 30 or fewer people in areas designated Green and / or Yellow on the United States Capitol Demonstration Areas Map (Traffic Regulations Appendix G) (the "Demonstration Map").

    c.   To change (a) the minimum time period between permit application and proposed demonstration activity from 10 business days to 5 business days

(Traffic Regulations §12.4.20) and (b) the "deemed approved" period from 48 hours to 24 hours prior to the proposed demonstration activity (Traffic Regulations § 12.4.30.d).

d.  To remove all references to 40 U.S.C. § 5104(f) or the concepts contained in its provisions (including but not limited to Traffic Regulations § 12.1.30.a and fn. 31).

2.    Rev. Mahoney will seek partial dismissal of the Third Amended Complaint, *with prejudice*, to the following extent and on the following terms:

a.  Rev. Mahoney's "No Demonstration Zone" Claim is not dismissed. By that claim, Rev. Mahoney is challenging—and may challenge—the constitutionality, facially and as applied, of three specific areas of the "no demonstration zone" only: (1) the sidewalks at the base of the Eastern Senate steps and the Eastern Senate steps themselves up to the second landing where the divider is presently located; (2) the sidewalks at the base of the Eastern House steps and the Eastern House steps themselves up to the second landing where the divider is presently located; and (3) the paved area at the base of the Eastern Capitol (center) steps and the Eastern Capitol (center) steps themselves up to the first landing where the  divider is presently located. While Rev. Mahoney seeks relief as to these three areas only, he may argue, in support of that relief, that the entire "no demonstration zone" is unconstitutional.

b.  Rev. Mahoney may not attempt to revive, in this Court, the Board Order Due Process Claim, which was previously dismissed, but Rev. Mahoney is not precluded from appealing the dismissal of this claim upon entry of a final

4

judgment in the Lawsuit or from pursuing that claim in this Court if the dismissal is vacated or reversed by the Court of Appeals. Rev. Mahoney may not attempt to revive any other claims that were previously dismissed, nor may he seek to appeal the dismissal of any other previously dismissed claims.

c. Defendants agree that the agreement set forth in Paragraph 1 above shall not prejudice or affect in any way Rev. Mahoney' argument in support of these preserved claims, including but not limited to Rev. Mahoney's argument that the fact the Board allows members of Congress to organize or sponsor demonstration activity in the "no demonstration zone"—whether alone, with other members of Congress, or with non-members of Congress—undermines any assertion by Defendants that allowing demonstration activity in the "no demonstration zone" presents a security threat or is otherwise not feasible.

d. Other than Rev. Mahoney's "No-Demonstration Zone" Claim, the other remaining claims in the Third Amended Complaint are dismissed, *with prejudice*, but Rev. Mahoney shall be precluded only from again bringing the claims that are actually alleged in the Third Amended Complaint. Rev. Mahoney is not precluded from, among other things, bringing future claims arising from future denials of Rev. Mahoney's future permit applications to conduct future demonstration activity on the Capitol Grounds or claims arising out of the Board's temporary 250-person crowd-size limitation in Area 1 and 150-person crowd-size limitation in Areas 8-11 that are now in place.

e. If any of the revisions to the Traffic Regulations contemplated in Paragraph 4 are not made, if the Traffic Regulations are further amended after the revisions

contemplated in Paragraph 4 are made due to security or other concerns, or if the revisions contemplated in Paragraph 4 are otherwise rendered ineffective, temporarily or permanently, because of a contradictory or conflicting Board Order, other Board action, or Act of Congress, Rev. Mahoney is not precluded from challenging, in the Lawsuit or otherwise, the failure to make the revision or the provision that deviates from the revisions contemplated in Paragraph 4.

3.     The Parties shall not be authorized to take discovery from one another in connection with Rev. Mahoney's "No-Demonstration Zone" Claim. Instead, the Parties will agree upon a stipulated set of facts that will govern the adjudication of that claim. Other than the stipulated set of facts and material that is the proper subject of judicial notice, the parties may not introduce any other evidence in connection with Rev. Mahoney's "No-Demonstration Zone" Claim; provided, however, that Rev. Mahoney may introduce a supplemental declaration if his standing becomes an issue.

4.     The Board shall enforce 40 U.S.C. § 5104(f) in a manner that is consistent with the United Sates Constitution and operative precedent, including but not limited to *Jeannette Rankin Brigade v. Chief of Capitol Police*, 342 F. Supp. 575, 583–84 (D.D.C. 1972), *aff'd* 409 U.S. 92 (1972).

Since the second mediation session, the Parties have been working diligently to come to an agreement on a stipulated set of facts that will govern adjudication of Rev. Mahoney's "No Demonstration Zone" Claim. The parties have now arrived at such an agreement. Thus, they seek entry of the Proposed Consent Decree and Order of Partial Dismissal to effect their partial settlement and to set a schedule for the adjudication of Rev. Mahoney's "No-Demonstration Zone" Claim.

6

The parties would like to thank Magistrate Judge Moxila A. Upadhyaya for her time and efforts during the mediation process for this Lawsuit.

## **CONCLUSION**

For the foregoing reasons, the parties jointly request that the Court enter the Proposed Consent Decree and Order of Partial Dismissal attached hereto as Exhibit A.

_/s/Joshua Wallace Dixon_
Joshua Wallace Dixon, SC Bar #75815
Eric Arthur Sell, D.C. Bar # 1742565
CENTER FOR AMERICAN LIBERTY
1311 S. Main Street, Suite 207
Mount Airy, MD 21771
(703) 687-6200
jdixon@libertycenter.org

Harmeet K. Dhillon, D.C. Bar # CA00078
Mark P. Meuser, D.C. Bar # CA00081
DHILLON LAW GROUP INC.
177 Post Street, Suite 700
San Francisco, CA 94108
(415) 433-1700

_Counsel for Plaintiff Patrick J. Mahoney_

December 28, 2023

MATTHEW M. GRAVES, D.C. Bar #418052
United States Attorney

BRIAN P. HUDAK
Acting Chief, Civil Division

_/s/ Kenneth Adebonojo_
KENNETH ADEBONOJO, N.J. Bar #00676-2001
Assistant United States Attorney
Civil Division
U.S. Attorney's Office for the District of Columbia
601 D Street, N.W.
Washington, D.C. 20530
Telephone: (202) 252-2562
kenneth.adebonojo@usdoj.gov

_Counsel for Defendants_

December 28, 2023

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **REVEREND PATRICK J. MAHONEY,** | **Civil Action No. 21-2314 (JEB)** |
| *Plaintiff*, | |
| **v.** | |
| **KAREN H. GIBSON, in her Official Capacity as U.S. Senate Sergeant at Arms and Doorkeeper and Chair, United States Capitol Police Board; WILLIAM P. MCFARLAND, in his Official Capacity as U.S. House of Representatives Sergeant at Arms and Member, United States Capitol Police Board; CHERE REXROAT, in her Official Capacity as Acting Architect of the Capitol and Member, United States Capitol Police Board; and J. THOMAS MANGER, in his Official Capacity as Chief of Police, United States Capitol Police and Ex-Officio Member, United States Capitol Police Board,** | **CONSENT DECREE AND ORDER OF PARTIAL DISMISSAL** |
| *Defendants*. | |

This matter comes before the Court on the Parties' Joint Motion for Entry of Consent Decree and Partial Order of Dismissal. The Court hereby GRANTS the Motion and ORDERS as follows:

WHEREAS, on August 31, 2021, Plaintiff Rev. Mahoney filed this action (the "Lawsuit"), which is now pending against Defendants KAREN H. GIBSON, in her Official Capacity as U.S. Senate Sergeant at Arms and Doorkeeper and Chair of the United States Capitol Police Board (the "Board"), WILLIAM P. MCFARLAND, in his Official Capacity as U.S. House of Representatives Sergeant at Arms and Member of the Board, CHERE REXROAT, in her Official Capacity as Acting Architect of the Capitol and Member of the Board, and J. THOMAS MANGER, in his

Official Capacity as Chief of Police, United States Capitol Police and Ex-Officio Member of the Board (collectively "Defendants"), alleging, among other things, that the Traffic Regulations for the United States Capitol Grounds, Amended February 17, 2019 (the "Traffic Regulations") violated the First and Fifth Amendments to the United States Constitution in several respects as set forth in Rev. Mahoney's Complaint and subsequent amendments thereto, culminating in the Third Amended Complaint (Dkt. 69);

WHEREAS, on April 4, 2023, the Court partially granted Defendants' Motion to Dismiss, dismissing, among other things, Rev. Mahoney's claim that allowing the Board to regulate speech on the Capitol Grounds by way of temporary restrictions, including but not limited to Board Orders, that are not published or otherwise made known to the general public violates the Due Process Clause of the Fifth Amendment (the "Board Order Due Process Claim");[1]

WHEREAS, on July 27, 2023 and September 20, 2023, the Parties mediated this dispute before Magistrate Judge Moxila A. Upadhyaya, where they reached a partial settlement of the Lawsuit in principle, which partial settlement was conditioned upon the Parties arriving at a stipulated set of facts to govern Rev. Mahoney's unsettled claim that the "no-demonstration zone" around the Capitol Building violates the First, Fifth, and Fourteenth Amendments (the "No Demonstration Zone' Claim");[2] and

WHEREAS, the Parties have now agreed to a stipulated set of facts.

NOW THEREFORE, it is hereby ORDERED, ADJUDGED, and DECREED as follows:

1.      The Court has subject matter jurisdiction under 28 U.S.C. § 1331.

---

[1] This claim is alleged in Count III of the Third Amended Complaint. Count III also contains other claims that are being dismissed by this Order.

[2] This claim is alleged in Counts I, II, and IV of the Third Amended Complaint. Counts I, II, and IV also contain other claims that are being dismissed by this Order.

2.      The Court has personal jurisdiction over Defendants.

3.      Venue is proper in this Court under 28 U.S.C. § 1391.

4.      The Board shall, no later than December 31, 2023, amend the Traffic Regulations as follows (however, Rev. Mahoney acknowledges the Board can still impose temporary security restrictions consistent with the First Amendment):

    a.   To provide that Members of Congress are exempt from Section 12 of the Traffic Regulations, but only for demonstration activity conducted by them that meets all three of the following requirements: (a) the demonstration activity is activity in which the Member is engaging in his or her official capacity; (b) the demonstration activity is activity that the Member has organized or sponsored; and (c) if persons other than the organizing or sponsoring Member(s) are participating in the demonstration activity, the Member(s) must personally be in attendance at the demonstration activity at all times for the exemption to last. If the organizing or sponsoring Member(s) departs, the demonstration activity will immediately be subject to Section 12 of the Traffic Regulations. This provision specifically precludes an exemption when a Member of Congress merely advocates for demonstration activity organized or sponsored by others.

    b.   To change the size of the group allowed to engage in demonstration activity without a permit from 19 people to 30 people (Traffic Regulations § 12.3, *et seq.*). This change authorizes demonstration activity without a permit in groups of 30 or fewer people in areas designated Green and / or Yellow on the United States Capitol Demonstration Areas Map (Traffic Regulations Appendix G) (the "Demonstration Map").

    c.   To change (a) the minimum time period between permit application and proposed demonstration activity from 10 business days to 5 business days (Traffic Regulations §12.4.20) and (b) the "deemed approved" period from 48 hours to 24 hours prior to the proposed demonstration activity (Traffic Regulations § 12.4.30.d).

    d.   To remove all references to 40 U.S.C. § 5104(f) or the concepts contained in its provisions (including but not limited to Traffic Regulations § 12.1.30.a and fn. 31).

    5.     The Third Amended Complaint is hereby partially dismissed, *with prejudice*, to the following extent and on the following terms:

    a.   Rev. Mahoney's "No Demonstration Zone" Claim is not dismissed. By that claim, Rev. Mahoney is challenging—and may challenge—the constitutionality, facially and as applied, of three specific areas of the "no demonstration zone" only: (1) the sidewalks at the base of the Eastern Senate steps and the Eastern Senate steps themselves up to the second landing where the divider is presently located; (2) the sidewalks at the base of the Eastern House steps and the Eastern House steps themselves up to the second landing where divider is are presently located; and (3) the paved area at the base of the Eastern Capitol (center) steps and the Eastern Capitol (center) steps themselves up to the first landing where the divider is presently located. While Rev. Mahoney seeks relief as to these three areas only, he may argue, in support of that relief, that the entire "no demonstration zone" is unconstitutional.

b.  Rev. Mahoney may not attempt to revive, in this Court, the Board Order Due Process Claim, which was previously dismissed, but Rev. Mahoney is not precluded from appealing the dismissal of this claim upon entry of a final judgment in the Lawsuit or from pursuing that claim in this Court if the dismissal is vacated or reversed by the Court of Appeals. Rev. Mahoney may not attempt to revive any other claims that were previously dismissed, nor may he seek to appeal the dismissal of any other previously dismissed claims.

c.  The provisions set forth in Paragraph 4 above shall not prejudice or affect in any way Rev. Mahoney' argument in support of these preserved claims, including but not limited to Rev. Mahoney's argument that the fact the Board allows members of Congress to organize or sponsor demonstration activity in the "no demonstration zone"—whether alone, with other members of Congress, or with non-members of Congress—undermines any assertion by Defendants that allowing demonstration activity in the "no demonstration zone" presents a security threat or is otherwise not feasible.

d.  Other than Rev. Mahoney's "No-Demonstration Zone" Claim, the other remaining claims in the Third Amended Complaint are dismissed, *with prejudice*, but Rev. Mahoney shall be precluded only from again bringing the claims that are actually alleged in the Third Amended Complaint. Rev. Mahoney is not precluded from, among other things, bringing future claims arising from future denials of Rev. Mahoney's future permit applications to conduct future demonstration activity on the Capitol Grounds or claims arising

out of the Board's temporary 250-person crowd-size limitation in Area 1 and 150-person crowd-size limitation in Areas 8-11 that are now in place.

e.   If any of the revisions to the Traffic Regulations contemplated in Paragraph 4 are not made, if the Traffic Regulations are further amended after the revisions contemplated in Paragraph 4 are made due to security or other concerns, or if the revisions contemplated in Paragraph 4 are otherwise rendered ineffective, temporarily or permanently, because of a contradictory or conflicting Board Order, other Board action, or Act of Congress, Rev. Mahoney is not precluded from challenging, in the Lawsuit or otherwise, the failure to make the revision or the provision that deviates from the revisions contemplated in Paragraph 4.

6.      The Parties shall not be authorized to take discovery from one another in connection with Rev. Mahoney's "No-Demonstration Zone" Claim. Instead, the Parties have agreed upon a stipulated set of facts that will govern the adjudication of that claim. Other than the stipulated set of facts and material that is the proper subject of judicial notice, the parties may not introduce any evidence in connection with Rev. Mahoney's "No-Demonstration Zone" Claim; provided, however, that Rev. Mahoney may introduce a supplemental declaration if his standing becomes an issue.

7.      The briefing schedule for the Parties' cross-motions for summary judgment on Rev. Mahoney's "No-Demonstration Zone" Claim is as follows:

a.   Rev. Mahoney's Motion and Memorandum in Support shall be due on January 15, 2024;

b.   Defendants' combined Motion and Memorandum in Support / Opposition to Rev. Mahoney's Motion shall be due on February 15, 2024;

    c.  Rev. Mahoney's combined Reply to Defendant's Opposition / Opposition to Defendants' Motion shall be due on March 7, 2024; and

    d.  Defendants' Reply to Rev. Mahoney's Opposition shall be due on March 28, 2024.

8.    The Board shall enforce 40 U.S.C. § 5104(f) in a manner that is consistent with the United Sates Constitution and operative precedent, including but not limited to *Jeannette Rankin Brigade v. Chief of Capitol Police*, 342 F. Supp. 575, 583–84 (D.D.C. 1972), *aff'd* 409 U.S. 92 (1972).

9.    The Parties will bear their own fees and costs with respect to the claims previously dismissed or dismissed by this Order.

10.    The Court shall retain jurisdiction of this matter for the purposes of construction, modification, and enforcement of this Consent Decree and Order, and for purposes of adjudicating Rev. Mahoney's "No-Demonstration Zone" Claim and any other related matter, including a claim by Rev. Mahoney, consistent with the terms of this Consent Decree and Order.

    IT IS SO ORDERED.

_____

The Honorable James Emmanuel Boasberg
Chief Judge, United States District Court

December  28 , 2023

7

J.A. 96

We consent:

> */s/Joshua Wallace Dixon*
> Joshua Wallace Dixon, SC Bar #75815
> Eric Arthur Sell, D.C. Bar # 1742565
> CENTER FOR AMERICAN LIBERTY
> 1311 S. Main Street, Suite 207
> Mount Airy, MD 21771
> (703) 687-6200
> jdixon@libertycenter.org
>
> Harmeet K. Dhillon, D.C. Bar # CA00078
> Mark P. Meuser, D.C. Bar # CA00081
> DHILLON LAW GROUP INC.
> 177 Post Street, Suite 700
> San Francisco, CA 94108
> (415) 433-1700
>
> *Counsel for Plaintiff Patrick J. Mahoney*

December 28, 2023

We consent:

> MATTHEW M. GRAVES, D.C. Bar #418052
> United States Attorney
>
> BRIAN P. HUDAK
> Acting Chief, Civil Division
>
> */s/ Kenneth Adebonojo*
> KENNETH ADEBONOJO, N.J. Bar #00676-2001
> Assistant United States Attorney
> Civil Division
> U.S. Attorney's Office for the District of Columbia
> 601 D Street, N.W.
> Washington, D.C.  20530
> Telephone: (202) 252-2562
> kenneth.adebonojo@usdoj.gov
>
> *Counsel for Defendants*

December 28, 2023

8

J.A. 97

# EXHIBIT 1

J.A. 98



J.A. 99

# EXHIBIT 2

Case 1:21-cv-02314-JEB    Document 95-2    Filed 01/15/24    Page 2 of 2

# EXHIBIT 3

J.A. 102



# EXHIBIT 4



J.A. 105

# EXHIBIT 5



J.A. 107

# EXHIBIT 6

J.A. 108

Case 1:21-cv-02314-JEB   Document 95-6   Filed 01/15/24   Page 2 of 2



J.A. 109

# EXHIBIT 7



J.A. 111

# EXHIBIT 8



J.A. 113

# EXHIBIT 9



J.A. 115

# EXHIBIT 10

J.A. 116



J.A. 117

# EXHIBIT 11



J.A. 119

# EXHIBIT 12



J.A. 121

# EXHIBIT 14

Case 1:21-cv-02314-JEB    Document 95-14    Filed 01/15/24    Page 2 of 2



# EXHIBIT 15

Case 1:21-cv-02314-JEB    Document 95-15    Filed 01/15/24    Page 2 of 2

# EXHIBIT 16



J.A. 127

# EXHIBIT 17



J.A. 129

# EXHIBIT 18

# EXHIBIT 19

Case 1:21-cv-02314-JEB    Document 95-19    Filed 01/15/24    Page 2 of 2



# EXHIBIT 20



Case 1:21-cv-02314-JEB    Document 95-20    Filed 01/15/24    Page 2 of 2

# EXHIBIT 21

Case 1:21-cv-02314-JEB    Document 95-21    Filed 01/15/24    Page 2 of 2



J.A. 137

# EXHIBIT 22

J.A. 138

Case 1:21-cv-02314-JEB    Document 96-1    Filed 01/15/24    Page 2 of 2



# EXHIBIT 23

Case 1:21-cv-02314-JEB    Document 96-2    Filed 01/15/24    Page 2 of 2



J.A. 141

# EXHIBIT 24

Case 1:21-cv-02314-JEB    Document 96-3    Filed 01/15/24    Page 2 of 2

# EXHIBIT 25

Case 1:21-cv-02314-JEB    Document 96-4    Filed 01/15/24    Page 2 of 2

# EXHIBIT 26

Case 1:21-cv-02314-JEB   Document 96-5   Filed 01/15/24   Page 2 of 2



J.A. 147

# EXHIBIT 27

Case 1:21-cv-02314-JEB   Document 96-6   Filed 01/15/24   Page 2 of 2

J.A. 149

# EXHIBIT 28



# EXHIBIT 29



J.A. 153

# EXHIBIT 30

# EXHIBIT 31

Case 1:21-cv-02314-JEB   Document 96-10   Filed 01/15/24   Page 2 of 2



J.A. 157

# EXHIBIT 32

J.A. 158

Case 1:21-cv-02314-JEB   Document 96-11   Filed 01/15/24   Page 2 of 2



# EXHIBIT 33

Case 1:21-cv-02314-JEB   Document 96-12   Filed 01/15/24   Page 2 of 2



J.A. 161

# EXHIBIT 34

Case 1:21-cv-02314-JEB    Document 96-13    Filed 01/15/24    Page 2 of 2



# EXHIBIT 35

Case 1:21-cv-02314-JEB   Document 96-14   Filed 01/15/24   Page 2 of 2



J.A. 165

# EXHIBIT 36

Case 1:21-cv-02314-JEB    Document 96-15    Filed 01/15/24    Page 2 of 2



# EXHIBIT 37

Case 1:21-cv-02314-JEB    Document 96-16    Filed 01/15/24    Page 2 of 2



# EXHIBIT 38

J.A. 170

Case 1:21-cv-02314-JEB    Document 96-17    Filed 01/15/24    Page 2 of 2



# EXHIBIT 39



J.A. 173

# EXHIBIT 40



J.A. 179

# EXHIBIT 41

Case 1:21-cv-02314-JEB   Document 96-20   Filed 01/15/24   Page 2 of 2



J.A. 177

# EXHIBIT 42

J.A. 178

Case 1:21-cv-02314-JEB    Document 96-21    Filed 01/15/24    Page 2 of 2

